# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **CHANDRA TATE, BARBARA WHITTOM, and ALEXUS WYNN,** *on behalf of themselves and all others similarly situated*, | Case No. 1:21-cv-00036 (Consolidated with Case No. 1:21-cv-55) |
| Plaintiffs, | Judge Douglas R. Cole |
| v. | |
| **EYEMED VISION CARE, LLC,** | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Under Fed. R. Civ. P. 23(e), Chandra Tate, Barbara Whittom, and Alexus Wynn ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby move this Court for preliminary approval of a proposed class action settlement consisting of a $5,000,000 non-reversionary common fund.

Plaintiffs rely upon the following Memorandum in Support; the Settlement Agreement[1] ("S.A.") attached as **Exhibit 1**; the Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") attached as **Exhibit 2**; the Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Decl.") attached as **Exhibit 3**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court.

A Proposed Order Granting Preliminary Approval of the Class Action Settlement is

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the Settlement Agreement dated June 18, 2025.

attached as **<u>Exhibit 4</u>**.

For the reasons set forth in the following Memorandum, Plaintiffs respectfully move that the Court preliminarily approve the Settlement, direct that notice be sent to all Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on the Motions for Final Approval and for Attorneys' Fees, Expenses, and Class Representative Service Awards, and set a Final Approval Hearing date.

Under S.D. Ohio Civ. R. 7.3(a), Plaintiffs have conferred with Defendant's Counsel and determined that this Motion is unopposed.

## <u>MEMORANDUM IN SUPPORT</u>

## I.    INTRODUCTION

Plaintiffs and the proposed Settlement Class have reached a proposed class action settlement with Defendant EyeMed Vision Care, LLC ("Defendant") for a $5,000,000 non-reversionary common fund to resolve all claims arising from the unauthorized access to Defendant's network that occurred on or around June 24, 2020 (the "Data Incident"). Approximately 692,154 individuals were notified by Defendant that their full names, full and partial Social Security Numbers, medical treatment/diagnosis information, non-EyeMed health insurance policy/member IDs, bank account/routing numbers, credit card numbers, financial summaries and other financial account numbers, birth and marriage certificates, passport numbers, and/or US Alien Registration Numbers (collectively, "Personal Data") may have been implicated in the Data Incident. *See* S.A., § 1.28.

The Settlement provides tangible relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval under Rule 23(e). *See also* Coates Decl. ¶¶ 14, 16, 26 (with table containing comparisons to other similar recent data breach settlements).

## II.    BACKGROUND

### A.  Procedural History

This is a data privacy class action brought by Plaintiffs on behalf of themselves and a class of all individuals "to whom Defendant issued notice of the Data Incident that certain Personal Data was impacted in the Data Incident" S.A., § 1.40. It concerns a cyberattack Defendant experienced in June 2020, in which an unauthorized third party may have gained access to files containing Personal Data belonging to Defendant's customers. In response to the Data Incident, Defendant sent a notice letter in December 2020 ("Notice Letter") to individuals who may have been impacted

and for whom Defendant could locate addresses, providing a description of the type of Private Data involved and explaining the Data Incident. Plaintiffs each received a Notice Letter from Defendant informing them about the Data Incident and that some of their Personal Data had been compromised. *Id*.

In response, on January 15, 2021, Plaintiff Tate filed the first complaint for claims arising from the Data Incident. *See* Pls' Unopp. Mot. Consolidate, Doc. 5, PageID 46. On January 22, 2021, Plaintiff Whittom filed a second, related Complaint. *Id.* On April 30, 2021, Plaintiffs filed their CAC, adding Plaintiff Wynn as a party, and asserting claims for (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) violation of California's unfair competition law; (vi) violations of California's Confidentiality of Medical Information Act; and (vii) violations of the California Consumer Privacy Act. *See* Consolidated Amended Complaint ("CAC"), Doc. 19, *passim*.

On March 22, 2021, the Court appointed Bryan L. Bleichner of Chestnut Cambronne PA and Lori G. Feldman of George Feldman McDonald, PLLC as Interim Lead Counsel, Terence R. Coates of Markovits, Stock & DeMarco, LLC as Interim Liaison Counsel, and Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, and Melissa R. Emert of Kantrowitz, Goldhamer & Graifman, P.C. to the Interim Executive Committee. Doc. 13. Defendant filed its Motion to Dismiss on June 7, 2021. Doc. 21. The Parties concluded briefing on July 12, 2021, and on September 29, 2023, the Court granted and denied the motion in part, allowing Plaintiffs' negligence claim to proceed Order, Doc. 40.

The Parties engaged in discovery during the pendency of the motion to dismiss. EyeMed produced and plaintiffs' counsel reviewed and analyzed multiple document productions made by Defendant in preparation for depositions. Furthermore, Plaintiffs' Counsel researched and drafted

a version of a second amended complaint, and discussed with Defendant and the potential settlement. Based upon the discovery produced, counsel for Plaintiffs were actively preparing a second amended consolidated complaint which incorporated new facts about the breach as well as information learned from discovery. Plaintiffs' Counsel continued to work on the second amended consolidated complaint and a motion for leave to file amended pleadings to conform to the evidence and newly-discovered facts.

Concurrently, the Parties engaged in a mediation session with Mr. Bennett G. Picker of Stradley Ronon Stevens & Young, LLP, on June 27, 2024. Coates Decl. ¶ 11. Before mediation, the Parties exchanged informal discovery, which allowed the parties to evaluate each side's respective position, including class size, number of impacted individuals with social security numbers, insurance coverage, and Plaintiffs' claimed damages. *Id.* ¶ 9, 11. The Parties were unable to resolve the case at the mediation session. *Id*. ¶ 11. However, following a subsequent mediator's proposal, the Parties later achieved a settlement in principle for a non-reversionary, common fund settlement of $5,000,000 on behalf of 692,154 individuals. *Id*. The Parties then engaged in many months of intense negotiations to finalize the terms of the Settlement Agreement, which will resolve all claims related to the Data Incident for the Class. *Id*.

### B. Summary of Settlement Terms

Under the proposed settlement, Defendant will pay $5,000,000 to establish the Common Fund to be distributed under the Settlement Agreement. The Settlement defines the Class as:

> **all natural persons who reside in the United States and to whom EyeMed issued notice of the Data Incident that certain Personal Data was impacted in the Data Incident.**

S.A., § 1.40. The Class specifically excludes (i) EyeMed and its officers and directors; (ii) all Persons who opt out of the Class; (iii) the Judge assigned to evaluate the fairness of the settlement;

and (iv) anyone found guilty by a competent court of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*. Under the Settlement, Defendant agrees to pay a total of $5,000,000 into the non-reversionary Common Fund, which will be used to make payments to Class Members and to pay the costs of Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. *See id.*, §§ 2.1; 8.4.

### 1. Settlement Benefits

The Common Fund will provide broad relief to the Class in several categories. First, it will provide reimbursement of up to $10,000.00 per claimant for documented monetary losses and lost time fairly traceable to the Data Incident. *Id*., § 2.1(b). These losses may include unreimbursed losses relating to fraud or identity theft; professional fees for legal, accounting, and credit repair services; costs associated with credit freezes; credit monitoring costs incurred between the Data Incident and the date of submission; and related ancillary expenses. *Id*. Claims for lost time may be submitted without documentation, and be reimbursed for up to four (4) hours of time spent on the Data Incident at a rate of $25 per hour, capped at $100 subject to the $10,000 cap. *Id*. § 2.1(c).

Second, the Common Fund will be used to make an estimated $50.00 *pro rata* payment to each Class Member submitting a valid claim. S.A., § 2.1(a); *see also* Coates Decl. ¶¶ 11, 13. This payment will be increased or decreased *pro rata* after the payment of any documented monetary losses and/or lost time claims as described herein, and after payment of attorneys' fees and expenses, the proposed Class Representatives' Service Awards, and the costs of Settlement Administration. *Id*.

If any funds remain after the distribution and reissuance of all payments from the Common Fund, the Parties will confer and determine whether there ought to be a redistribution. *Id*., § 8.4.

Any funds remaining after redistribution (or the Parties forego redistribution) will be paid to the unclaimed property funds for the respective jurisdictions in which such Settlement Class Members reside. *Id.* If the funds remaining are so minimal that distribution cost would be prohibitive, they will be paid to a non-profit organization approved by the Court. *Id.*; *see also* Coates Decl. ¶ 33.

### 2. Business Practices Changes

Defendant has also promised significant cybersecurity enhancements to its network and systems under the terms of the Settlement. Class Members will also receive the benefit of Defendant's business practice changes, including, but not limited to, (1) enhanced authorization requirements for individuals with access to Defendant's network; (2) providing additional mandatory security awareness training to Defendant's employees and providing reminders to all employees of the password complexity requirements; (3) updating Defendant's internal password reset requirements; (4) adding additional auditing mechanisms to identify weak passwords; (5) converting the mailbox at issue in the Data Incident to a delegated account; (6) enhancing Defendant's multi-factor authentication protocols; (7) shortening retention period for the mailbox at issue in the Data Incident; and (8) engaging a third-party vendor to perform an updated HIPAA security risk assessment. S.A. § 2.2.

### 3. Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this Litigation. *Id.*, §§ 1.34; 6.

### 4. The Notice and Administration Plans

Under the Settlement Agreement, proposed Class Counsel, with Defendant's approval, have selected Kroll Settlement Administration, LLC ("Kroll") to be the Settlement Administrator,

which will provide the Class with notice and administer the claims. *Id.*, §§ 1.38-39. Proposed Class Counsel's decision, with Defendant's consent, to select Kroll was based on the scope of settlement administration Kroll proposed balanced against the cost for such services. *See* Coates Decl. ¶¶ 18-20. Proposed Class Counsel understands that any settlement administration costs and expenses will be deducted from the Common Fund and endeavored to select a settlement administrator for this case offering the broad services for a price that is favorable to the Class. *Id.*

Defendant, with the assistance of the Settlement Administrator, shall create a list of all names, known emails, and/or known mailing addresses of potential Class Members, to the extent such information was known, available, and contained in the original list used to send to Class Members notice about the Data Incident. *See Id.*, § 3.2(a); p. 38. The Settlement Administrator will then provide a written notice to each Class Member for whom valid mailing addresses are known and/or an email notice to Class Members for whom valid email addresses are known. S.A., § 3.2. For individuals for which no email or postal address can be located by Defendant and/or the Settlement Administrator, substitute notice shall be communicated by the Settlement Administrator via print and/or electronic media through a process mutually agreed upon by Proposed Class Counsel and counsel for Defendant. *Id.* The Short Notice will be sent in a form substantially similar to that in Exhibit C to the Settlement Agreement, and will clearly and concisely inform Class Members of the amount of the Common Fund, that they may do nothing and be bound by the settlement, object, exclude themselves by completing the exclusion form and not be bound by the settlement, or make a claim by completing and returning a claim form and be bound by the settlement. *Id.*, §§ 4.2; 5.2; 9.3. The Settlement Administrator will also publish a Long Form Notice and Claim Form on the Settlement Website established and administered by the Settlement Administrator, which shall contain information about the Settlement, including

6

copies of the notice, the Settlement Agreement, and all court documents related to the Settlement. *Id.*, §§ 1.43; 3.2(d). The Settlement Administrator will also be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds from the Common Fund directly to Class Members. *Id.*, § 9.1. Proposed Class Counsel, with deep experience receiving settlement administration bids in data breach class action settlements such as this one, was able to work with Kroll to receive the Settlement Administration quote for this case and establish a notice plan that will sufficiently inform the Settlement Class. Coates Decl. ¶¶ 18-19; Kroll Decl. ¶¶ 2, 5, 7-18.

### 5. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 1/3 of the Common Fund (*i.e.*, $1,666,66.66), and for reimbursement of Plaintiffs' Counsel's reasonable litigation expenses not to exceed $50,000.00, which shall be paid from the Common Fund. S.A, § 7.2. Interim Counsel currently expect that the litigation expenses through Final Approval will be $48,000.00, including mediation expenses for retaining Mr. Picker to mediate this case and retaining an expert. Coates Decl. ¶ 22. The motion will be filed at least fourteen (14) days before Objection/Opt-Out Deadline. The Settlement Agreement further provides for a payment of up to $2,500.00 each, subject to Court Approval, to the Class Representatives as Service Awards for their services and efforts in representing the Class. S.A., § 7.3; Coates Decl. ¶ 27.

## III. LEGAL STANDARD

### A. Standard for Preliminary Approval

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Rule 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members

of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[1] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[2]

### B. The Court has Subject Matter Jurisdiction

Subject matter jurisdiction exists here under the Class Action Fairness Act, 28 U.S.C. §

---

[1] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 1:04-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[2] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("[A]pproval of a class action settlement requires a finding that [it] is fair, adequate, and reasonable.").

1332(d)(2). Under CAFA, a federal court has subject matter jurisdiction over a class action settlement where (1) the amount in controversy exceeds $5,000,000 inclusive of interest and costs; (2) at least one putative class member resides in a state different from the defendant; and (3) the putative class has more than 100 members. 28 U.S.C. § 1332(d)(2)–(6); *Nessel ex rel. Michigan v. AmeriGas Partners, LP*, 954 F.3d 831, 834 (6th Cir. 2020). Each prong is more than satisfied here, and no exceptions to CAFA jurisdiction apply.

### C. It is Appropriate to Apply Ohio Law to Substantive Issues

It is appropriate for the Court to apply Ohio law based on the choice of law provision in the Settlement Agreement. *See* S.A., § 11.13 ("The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio"); *cf. Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (holding that variations in claimants' respective state laws made no difference when the Settlement Agreement specified a single state's law); *see also In re Cinfed Fed. Credit Union Data Breach Litig.* ("*Cinfed*"), No. 1:23-CV-776, 2025 WL 1637686, at *5 (S.D. Ohio June 10, 2025) (holding that Ohio law could be applied based on choice of law provision in settlement agreement).

The choice of law provision in a settlement agreement "governs unless 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.'" *Cinfed*, 2025 WL 1637686, at *5, quoting *Schulke Radio Prods., Ltd., v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983). It is appropriate to apply Ohio law for purposes of assessing the settlement because Ohio has the most significant relationship to the Plaintiffs' and Class Members' claims. As this Court held at the motion to dismiss stage, "'[f]or

tort actions, Ohio choice-of-law follows the Restatement . . . which turns on which state possesses the most significant relationship to the tort injury.' Factors relevant to the significant relationship test include the place of injury, the residence of the parties, and the place where the relationship of the parties is centered." *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 WL 6383467, at *6 (S.D. Ohio Sept. 29, 2023), quoting *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 289 (Ohio 1984) (internal citation omitted). For contract actions, the test is the same. *Id.* (internal quotation omitted).[3]

## IV. ARGUMENT

### A. The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### 1. The Proposed Settlement is the Product of Arm's-Length Negotiations Between Experienced Professionals

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See*, *e.g.*, *Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have substantial class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Coates Decl. ¶¶ 11-13. Settlement negotiations

---

[3] Even in the absence of the Settlement Agreement provision regarding choice of law, Ohio law would still govern. Federal courts sitting in diversity apply the choice of law principles of the forum state. *Cinfed*, 2025 WL 1637686, at *4. Under Ohio's choice-of-law principles, an extensive choice-of-law analysis "is not necessary where no conflict exists between the laws at issue." *Id.* That would be the case here. *Cf. Cinfed*, 2025 WL 1637686, at *5 (finding no conflict in data breach case as to unjust enrichment, negligence and implied contract claims).

in this case took place over the course of about a year and involved a mediating with an experienced data privacy class action mediator. *Id*. No collusion or illegality existed during the settlement process. *Id*. Proposed Class Counsel, without any opposition from Defendant, support the Settlement as fair and reasonable, and all certify that it was reached at arms' length. *Id*., ¶¶ 28-29.

### 2. The Proposed Settlement Falls Within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing

Although Plaintiffs believe that their remaining claim is meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Cinfed*, 2025 WL 1637686, at *9 (given data breach class risks recovering nothing, the settlement provides an "efficient mechanism to resolve this dispute with overall cost, time, and risk avoidance for all parties"); *see also Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted).[4] Furthermore, the Settlement is in line with other recent data breach settlements in terms of the amount recovered per Class Member. Coates Decl. ¶ 26. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits. Class Members may claim documented losses up to $10,000, including up to $100 for lost time, and may receive *pro rata* cash payments under the Settlement. S.A., § 2.1; *Cinfed*, 2025 WL

---

[4] Protracted litigation is often required to get past the pleading stage in data breach actions. *See, e.g.*, *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186, 2017 WL 5986972, at *13 (W.D. Ky. Dec. 1, 2017) (granting and denying in part motion to dismiss complaint in data breach action involving employee PII); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186, 2020 WL 265206, at *7 (W.D. Ky. Jan. 17, 2020) (dismissing additional claims brought in amended complaint); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186, 2021 WL 3076786, at *1 (W.D. Ky. July 1, 2021) (granting leave to file second amended complaint over objection); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) (granting renewed motion to certify class including negligence claim).

1637686, at *9 (similar two-tier distribution in data breach "suggests fairness"). Notably, the Settlement Agreement also provides essential injunctive relief in the form of business practices changes on the part of Defendant to ensure that their customers, like Class Members, are better protected against future data incidents. *Id.*, § 2.2.

### 3. The Proposed Settlement Has No Obvious Deficiencies

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiffs, like all other Class Members, will receive their settlement benefit in accordance with a claims process that will be presented to the Court for approval.

The award of attorneys' fees and expenses, as well as any Service Awards for Plaintiffs, will be determined by the Court. Proposed Class Counsel have agreed to limit their fee request to one-third of the Common Fund ($1,666,666.67), which is well within the range awarded within the Sixth Circuit. *See In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (in the Sixth Circuit, attorneys' fees "typically . . . range from 20%-50%"); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2022 WL 4385345, at *2 (E.D. Mich. Sept. 22, 2022) (a fee request of one-third of the class action settlement fund "is within the range of fee awards made by courts in this Circuit"). Plaintiffs further seek modest Service Awards of up to $2,500.00 each for their active involvement in this litigation. S.A., § 7.3; Coates Decl. ¶ 27. This amount is lower than the amounts awarded in *Parker Hannifin* ($3,500 service awards in settlement before a motion to dismiss decision), *Marietta Area Health Care* ($5,000.00 service awards after a motion to dismiss decision and limited discovery), *Toyotetsu* ($5,000 service award before a motion to dismiss was briefed), and *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-cv-

3499, 2024 WL 958726, at * 7 (S.D. Ohio. Mar. 5, 2024) ($5,000 service awards before a motion to dismiss decision). Because Plaintiffs and proposed Class Counsel will move for an award of attorneys' fees, expenses, and Service Awards at least 14 days before the objection and opt out deadlines, the Court will have the ability to consider these requests and the Class's response to them, if any, when evaluating whether to grant final approval of class action settlement.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### B. Certification of the Settlement Class Is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is automatically precluded. Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the

case." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement"); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying a 23-person class). The approximately 692,154 Class Members in this case satisfy the numerosity element.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* (internal quotation marks and citation omitted).

Plaintiffs' claims turn on whether Defendant's security network was adequate to protect Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once. *Cf. Cinfed*, 2025 WL 1637686 at \*6 (finding commonality in data breach case at final approval based on "central issue" as to whether Cinfed negligently secured personal data).

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the class representative's claims must "arise[] from the same event or practice or course of conduct" as the rest of the putative Class.

*Miller v. Charter Nex Films – Delaware, OH, Inc.*, No. 2:18-cv-1341, 2020 WL 2896913, at *4 (S.D. Ohio June 2, 2020). Typicality seeks to ensure that there are no conflicts between the claims of the class representatives and those of the Class Members they represent. In this case, the claims all involve Defendant's conduct toward the Class Members, and Plaintiffs' claims are based on the same legal theories and align with those of absent class members. *Cf. Cinfed*, 2025 WL 1637686 at *6 (finding typicality in data breach case). Thus, Plaintiffs' claims are typical of those of the Class, and they are appropriate Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: (1) the "representative must have common interests with unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594. Plaintiffs have no conflicts with the Class and have participated actively in the case. Coates Decl. ¶ 27.

Moreover, proposed Class Counsel have significant experience in class and complex litigation, including more than 50 data breach class actions in state and federal courts throughout the country. *Id.*, ¶ 29. Chestnut Cambronne PA, George Feldman McDonald, PLLC, and the rest of Plaintiffs' Counsel, have invested considerable time and resources into the prosecution of this action. *Id.*, ¶¶ 7, 25. Proposed Class Counsel have experience litigating complex class action lawsuits and were able to negotiate an outstanding settlement for the Class Members. *Id.*, ¶¶ 6, 16; see also Pls' Mem. in Supp. of Mot. for Appt. of Interim Class Counsel, Doc. 8-1. Based on the

results achieved here, the Court should appoint Bryan L. Bleichner and Lori G. Feldman as Class Counsel, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5. Certification Under Rule 23(b)(3) is Appropriate

Class certification under Rule 23(b)(3) has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084). When assessing these components, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 (on a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial").

The Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Also, the court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by class members; (iii) the desirability of concentrating

16

the litigation in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017).

### a. Common Questions of Law and Fact Predominate Over the Settlement Class

In this case, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of this issue will be the same for everyone, the predominance requirement is readily satisfied. *Cf. Cinfed*, 2025 WL 1637686 at *7 (finding predominance in data breach case because "common questions of fact outweigh any questions that differ among class members.").

### b. A Settlement Class is the Superior Method of Adjudicating This Case

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied. The Settlement Agreement provides members of the Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be substantial for each Class Member; the most reasonable and economically feasible method of litigating and resolving these hundreds of claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case is the individual amount at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this litigation is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620; *see also Cinfed*, 2025 WL 1637686 at *7 (finding superiority in data breach class action because costs to litigate would likely exceed the common fund and a class action is efficient).

### C. The Court Should Appoint the Proposed Class Representatives, Proposed Class Counsel, and Settlement Administrator

The above-named Plaintiffs also seek to be appointed as Class Representatives for the Settlement Class. As discussed above, Plaintiffs have cooperated with counsel, assisted in the preparation of the Complaints, participated in discovery including answering Defendant's discovery requests, reviewed and approved of the settlement demand, and approved the terms of the Settlement on behalf of the Settlement Class. Coates Decl. ¶ 27. Moreover, Plaintiffs are committed to continuing to prosecute this case through the Court's potential final approval, including overseeing the notice program, and defending the Settlement against any objectors. They are adequate to serve, and the Court should appoint them as Class Representatives.

Also, for the reasons previously discussed with respect to adequacy of representation, the Court should designate Bryan L. Bleichner and Lori G. Feldman as Class Counsel. Finally, the parties have agreed that Kroll should act as Settlement Administrator. Kroll and its principals have

a long history of successful settlement administrations in class actions, including data breach actions such as this. Kroll Decl. ¶¶ 1, 2. The Court should appoint Kroll to act in this case.

### D.  The Proposed Notice Plan Is Reasonable and Should Be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The notice plan set forth in the Settlement Agreement ("Notice Plan") provides the best notice practicable under the circumstances. S.A. § 3.2.  The Settlement Notice will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. *Id.* In addition, Kroll will administer the Settlement Website containing important and up-to-date information about the Settlement. Kroll Decl. ¶ 15.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies these requirements, as it notifies Class Members that proposed Class Counsel will apply for attorneys' fees of no more than one-third of the common fund, plus reimbursement of reasonable costs and expenses. S.A. § 3.2 and Exhibits.  It also complies with Rule 23(c)(2)(B) and due process because it informs Class Members of: (1) the

nature of the action; (2) the essential terms of the settlement, including the Class definition, claims asserted, and benefits offered; (3) the binding effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for doing so and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement.

Thus, the Notice Plan and Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by mail or email to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E.  The Court Should Provide a Schedule Leading Up to the Final Approval Hearing

Plaintiffs request that the Court set a schedule, leading up to a Final Approval Hearing, including deadlines for notice to Class Members, for Class Members to object to or opt out of the settlement, and to make claims under the settlement; and deadlines for filing of papers in support of motions for final approval and for attorneys' fees. A proposed schedule is included in the proposed Preliminary Approval Order. At that hearing, the Court may hear all evidence and argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

### V.     CONCLUSION

Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of Class Action Settlement. A proposed Order is attached as **Exhibit 4.**

Dated: June 18, 2025                    Respectfully submitted,

                                        */s/ Terence R. Coates*
                                        Terence R. Coates (0085579)
                                        **MARKOVITS, STOCK & DEMARCO, LLC**
                                        119 East Court Street, Suite 530
                                        Cincinnati, Ohio 45202
                                        Telephone: (513) 651-3700
                                        Facsimile: (513) 665-0219
                                        *tcoates@msdlegal.com*

                                        ***Plaintiffs' Interim Liaison Counsel***

                                        Bryan L. Bleichner (*pro hac vice*)
                                        **CHESTNUT CAMBRONNE PA**
                                        100 Washington Avenue South, Suite 1700
                                        Minneapolis, MN 55401
                                        Phone: (612) 339-7300
                                        Fax: (612) 336-2940
                                        *bbleichner@chestnutcambronne.com*

                                        Lori G. Feldman (*pro hac vice*)
                                        **GEORGE FELDMAN MCDONALD, PLLC**
                                        102 Half Moon Bay Drive
                                        Croton-On-Hudson, NY 10502
                                        Phone: (917) 983-9321
                                        Fax: (888) 421-4173
                                        *LFeldman@4-Justice.com*

                                        ***Interim Co-Lead Counsel for Plaintiffs and the Class***

                                        Gayle M. Blatt (*pro hac vice*)
                                        **CASEY GERRY SCHENK FRANCAVILLA
                                        BLATT & PENFIELD, LLP**
                                        110 Laurel Street
                                        San Diego, CA 92101
                                        Phone: (619)238-1811
                                        *gmb@cglaw.com*

                                        Melissa R. Emert (*pro hac vice*)
                                        **KANTROWITZ, GOLDHAMER
                                        & GRAIFMAN, P.C.**
                                        747 Chestnut Ridge Road
                                        Chestnut Ridge, NY 10977
                                        Tel: (866) 680-1835
                                        *memert@kgglaw.com*

                                        ***Plaintiffs' Interim Executive Committee***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2025, I served the foregoing upon counsel for all parties by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E) and S.D. Ohio Civ. R. 5.2(b).

<u>/s/ Terence R. Coates</u>
Terence R. Coates (0085579)
