# EXHIBIT
# 1

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **CHANDRA TATE,** *et al.*, | **Case No. 1:21-cv-136** |
| Plaintiffs, | |
| | **District Judge Douglas R. Cole** |
| v. | |
| **EYEMED VISION CARE, LLC,** | |
| Defendant. | |

### SETTLEMENT AGREEMENT

This Settlement Agreement, dated June 18, 2025, is made and entered into by and among the following Settling Parties (as defined below): Chandra Tate, Barbara Whittom, and Alexus Wynn ("Plaintiffs"), and EyeMed Vision Care, LLC ("Defendant" or "EyeMed" and, together with Plaintiffs, the "Parties" or "Settling Parties"). The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to resolve, discharge, and settle the Released Claims and this Litigation (as defined below), upon and subject to the terms and conditions set forth below.

### I.      INTRODUCTION

This is a nationwide class action brought by Plaintiffs on behalf of themselves, and a class of all individuals whose Personally Identifiable Information ("Personal Information") and Personal Health Information ("Health Data") (Personal Information and Health Data are collectively referred to herein as "Personal Data") was potentially compromised in the Data Incident, discovered by Defendant on or about July 1, 2020 (below defined as the "Litigation"). (*See generally* Plaintiffs' Consolidated Class Action Complaint ("CAC"), ECF No. 19.)

1

The case arises from the alleged access to Personal Data as a result of a June 2020 data incident experienced by Defendant (the "Data Incident"). Plaintiffs and Class Members include current and former EyeMed vision care subscribers, their dependents, and other individuals affiliated with EyeMed whose Personal Data was potentially accessed in the Data Incident.

On January 15, 2021, Plaintiff Chandra Tate filed the first complaint against Defendant in this Court for claims arising from the Data Incident. On January 22, 2021, Plaintiff Barbara Whittom filed a second, related Complaint in this Court. On April 30, 2021, Plaintiffs filed their CAC, which consolidated matters and added Plaintiff Alexus Wynn as a party. In the CAC, Plaintiffs alleged individually, and purportedly on behalf of a proposed class that, as a direct result of the Data Incident, that they potentially suffered numerous injuries and would likely suffer additional harm in the future. For these alleged harms, Plaintiffs brought the following claims: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) violation of California's unfair competition law; (vi) violations of California's Confidentiality of Medical Information Act; and (vii) violations of the California Consumer Privacy Act. Defendant denies all claims, allegations of wrongdoing, and denies all liability.

On June 7, 2021, Defendant filed its motion to dismiss the CAC in full. The motion to dismiss was fully briefed on July 12, 2021. On September 29, 2023, the Court entered its order on the motion to dismiss granting the motion as to all claims except the count of negligence. Plaintiffs anticipated amending the CAC to address the Court's dismissal of the other counts before reaching an agreement-in-principle to settle the Litigation. Defendant disputes liability under Plaintiffs' remaining negligence count and as to the dismissed causes of action.

## II.     MEDIATION AND SETTLEMENT DISCUSSIONS

On June 27, 2024, the parties engaged in a mediation session with Mr. Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. Mr. Picker is a well-regarded mediator with substantial experience handling data security class action mediations. Although a resolution was not reached at mediation, Mr. Picker continued to informally negotiate with the parties, and, ultimately, a settlement was reached. The agreed resolution or settlement is memorialized in this Settlement Agreement.

## III.    PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Plaintiffs believe that their negligence claim asserted in the Litigation, and as set forth in their CAC against Defendant, has merit. Plaintiffs and Proposed Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Defendant through motion practice, trial, and potential appeals. Plaintiffs and Proposed Class Counsel have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation, especially in complex class actions. Proposed Class Counsel are highly experienced in class action litigation and, in particular, data breach and privacy litigation, and have previously served as counsel in data breach class actions through final approval. Plaintiffs and Proposed Class Counsel have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Class Members.

## IV.    DENIAL OF WRONGDOING AND LIABILITY

Defendant denies each and all of the claims and contentions alleged against it in the CAC. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged. Nonetheless, Defendant has, therefore, determined that it is desirable and beneficial that the

Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

**V.    SETTLEMENT TERMS AND DEFINITIONS**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Proposed Class Counsel, Defendant, and Defendant's Counsel that, subject to the approval of the Court, the Released Claims (as defined below) shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

**1.    Definitions**

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "**Agreement**" or "**Settlement Agreement**" means this agreement, the exhibits, and the settlement embodied herein.

1.2    "**CAFA Notice**" means the Class Action Fairness Act notice that Defendant shall direct the Settlement Administrator to serve upon the appropriate state and federal officials, providing notice of the proposed Settlement pursuant to 28 U.S.C. § 1715.

1.3    "**CAC**" means the April 30, 2021 Consolidated Class Action Complaint filed by Plaintiffs at ECF No. 19 in this Litigation.

1.4    "**Claimant**" means a Settlement Class member who makes a Claim for settlement benefits under this Agreement.

4

1.5 "**Claim Form(s)**" mean(s) the form(s) that will be used by Class Members to submit a Settlement Claim to the Settlement Administrator and that are substantially in the form as shown in **Exhibit A** to this Settlement Agreement.

1.6 "**Claims Deadline**" means the postmark and/or online submission deadline for Settlement Claims pursuant to Paragraph 2, which shall be 90 days after the Notice Date (as defined below). The Claims Deadline shall clearly be set forth in the order granting Preliminary Approval of the Settlement, as well as in the Notice and on the Claim Form.

1.7 "**Claim Supplementation**" means a request by the Settlement Administrator to a Claimant in writing, including via email, for additional information the Settlement Administrator may reasonably require in order to evaluate the Claim, *e.g.*, documentation requested on the Claim Form and information regarding the claimed losses and the resolution thereof.

1.8 "**Class Member(s)**" means a Person(s) who falls within the definition of the Settlement Class.

1.9 "**Class Representative(s)**" mean Plaintiffs and includes Chandra Tate, Barbara Whittom, and Alexus Wynn.

1.10 "**Common Fund**" means a non-reversionary common fund to be funded by Defendant in the amount of $5,000,000.00 within 60 days of the Preliminary Approval Order as set forth in Paragraph 8.1.

1.11 "**Costs of Settlement Administration**" means all actual costs associated with or arising from Settlement Administration, including any Notice required by Federal Rule of Civil Procedure 23.

1.12 "**Court**" means the United States District Court for the Southern District of Ohio, United States District Judge Douglas R. Cole.

1.13 "**Data Incident**" means the data security incident perpetrated by an unidentified third party against Defendant on or around June 2020, as described in the CAC.

1.14 "**Defendant's Counsel**" means Baker & Hostetler LLP.

1.15 "**Dispute Resolution**" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.16 "**Effective Date**" means the first date by which all of the events and conditions specified in Paragraph 1.20 herein have occurred and been met.

1.17 "**Final**" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the Court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fees award or Service Awards made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.18 "**Final Approval Order**" is the order through which the Court grants final approval of class action settlement and finds that this settlement is fair, reasonable, and adequate.

1.19 "**Final Fairness Hearing**" means the hearing held before the Court during which the Court will consider entering a Final Approval Order and approving the payment of attorneys' fees, costs, expenses, and/or service awards to Class Representatives.

1.20 "**Judgment**" means a judgment rendered by the Court pursuant to Federal Rule of Civil Procedure 54.

1.21    "**Litigation**" means the consolidated case brought by Plaintiffs against Defendant, styled *Tate, et al. v. EyeMed Vision Care, LLC*, Case No. 1:21-cv-36, pending in the United States District Court for the Southern District of Ohio, Western Division.

1.22    "**Long Form Notice**" means the long-form notice of settlement to be posted on the Settlement Website (as defined below), substantially in the form as shown in **Exhibit B** to this Settlement Agreement.

1.23    "**Monetary Loss(es)**" means, among others, documented, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, fuel, and long-distance telephone charges. Documentation supporting Monetary Losses may include receipts or other documentation, not "self-prepared" by the Claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

1.24    The "**Notice Date**" means 45 days after the entry of the Preliminary Approval Order, which is the date of commencement of Notice being sent to Settlement Class Members. The Notice Date shall be used for purposes of calculating the Claims Deadline, Opt-Out Date, and Objection Date deadlines, and all other deadlines that flow from the Notice Date.

1.25    "**Objection Date**" means the date by which Class Members may file with the Court through the Court's electronic case filing ("ECF") system and mail to Class Counsel and Defendant's Counsel their objection to the Settlement for that objection to be effective. The

postmark date shall constitute evidence of the date of mailing for these purposes. The Objection Date shall be 60 days after the Notice Date.

1.26 "**Opt-Out Date**" means the date by which Class Members must mail to the Settlement Administrator their requests to be excluded from the Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be 60 days after the Notice Date.

1.27 "**Person**" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.28 "**Personal Data**" includes, together or separately, the following data elements: Full and Partial Social Security Numbers, Medical Treatment/Diagnosis Information, Non-EyeMed Health Insurance Policy/Member IDs, Bank Account/Routing Numbers, Credit Card Numbers, Financial Summaries and Other Financial Account Numbers, Birth and Marriage Certificates, Passport Numbers, and/or US Alien Registration Numbers.

1.29 "**Plaintiffs**" mean Chandra Tate, Barbara Whittom, and Alexus Wynn.

1.30 "**Preliminary Approval Order**" means the order preliminarily approving the Settlement Agreement and ordering that Notice be provided to the Class. The Settling Parties' proposed form of Preliminary Approval Order is attached to this Settlement Agreement as **Exhibit C**.

1.31 "**Proposed Class Counsel**" and "**Class Counsel**" means Bryan L. Bleichner of Chestnut Cambronne PA and Lori G. Feldman of George Feldman McDonald, PLLC.

1.32 "**Related Entities**" means Defendant's past, present, and future parents, subsidiaries, divisions, customers, partnerships, joint ventures, affiliates, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, assigns, employees, servants, members, providers, partners, principals, officers, directors, shareholders, owners, heirs, executors, administrators, personal representatives, insurers, and reinsurers, and trustees of such entities, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.33 "**Released Claims**" shall collectively mean, for Settlement Class members only, any and all past, present, and future claims and causes of action arising from the conduct alleged in the CAC, including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States;; all state consumer, privacy-protection, and like statutes; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages,

exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons, based on, relating to, concerning or arising out of the Data Incident and alleged access or misuse of their Personal Data or the allegations, transactions, occurrences, facts, or circumstances alleged in, or otherwise described in, the Litigation. Released Claims shall not include the right of any Class member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of members of the Class who have timely excluded themselves from the Class.

　　　1.34　"**Released Parties**" means Defendant and its Related Entities.

　　　1.35　"**Remainder Funds**" means the funds, if any, that remain in the Common Fund after settlement payments for all Valid Claims (as defined below). The funds remaining in the Common Fund after settlement payments have been distributed and the time for cashing and/or depositing checks has expired will be Remainder Funds. The Remainder Funds will be distributed to the unclaimed property fund of the respective state for each Class member who submitted a Valid Claim, but did not redeem his/her settlement payment. The Settlement Administrator, with Class Counsel's approval, will send reminder notifications to Class Members who have submitted Valid Claims but have not redeemed their settlement payments for the purpose of reducing the amount of unredeemed settlement payments and the amounts ultimately sent to the respective state unclaimed funds departments.

　　　1.36　"**Service Awards**" shall have the meaning ascribed to it as set forth in Paragraph 7.3 of this Settlement Agreement. The Service Awards requested in this matter will be $2,500.00

to each Class Representative, subject to court approval and will be in addition to any other Settlement benefits Plaintiffs may receive. The Service Awards shall be paid through the Common Fund using available funds therein.

1.37    "**Settlement Administration**" means the means the providing of Notice, the processing and payment of awards of Attorneys' Fees and Expenses and Service Award(s), and the processing and payment of Claims received from Class Members by the Settlement Administrator, and all undertakings reasonably necessary by the Settlement Administrator to fulfill its obligations hereunder.

1.38    "**Settlement Administrator**" means Kroll Settlement Administration, LLC, who is experienced in administering class action claims generally and specifically those of the type provided for and made in data security litigation.

1.39    "**Settlement Claim" or "Claim**" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.40    "**Settlement Class**" means all natural persons who reside in the United States and to whom EyeMed issued notice of the Data Incident that certain Personal Data was impacted in the Data Incident. The Class specifically excludes: (i) EyeMed and its officers and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.41    "**Settling Parties**" means, collectively, Defendant and all Released Parties and Plaintiffs, individually and on behalf of the Settlement Class.

1.42    "**Short Notice**" means the short notice of the proposed class action settlement, substantially in the form as shown in **Exhibit D** to this Settlement Agreement. The Short Notice will direct recipients to the Settlement Website where recipients may view the Long Notice and make a claim for monetary benefits. The Short Notice will also inform Class Members, *inter alia*, of the Claims Deadline, the Opt-Out Date and Objection Date, and the date of the Final Approval Hearing (as defined below).

1.43    "**Settlement Website**" shall be the URL www.EyeMedDataSettlement.com, which the Settlement Administrator will establish and will contain detailed information about this Litigation as set forth in Paragraph 3.2(d).

1.44    "**Unknown Claims**" means any of the Released Claims that any Settlement Class Members, including Plaintiffs, do not know or suspect to exist in their favor at the time of the release that, if known by them, might have affected their settlement with, and release of, the Released Persons, or might have affected their decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs and the Released Parties intend to and expressly shall have, and each of the other members of the Settlement Class intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits limitation, California Civil Code §§ 1798.80 *et seq.*; Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF

KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The members of the Settlement Class, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but the Plaintiffs expressly shall have, and each other member of the Settlement Class shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and members of the Settlement Class shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.45    "**Valid Claims**" means Settlement Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

## 2.    Settlement Benefits

2.1    Claimed Benefits: All Class Members shall have the opportunity to submit a Claim Form for certain Claimed Benefits on or before the Claims Deadline. The Claimed Benefits, as described below, shall include (a) Pro-Rata Cash Claims; (b) Lost-Time Claims; and (c) Out-of-Pocket-Loss Claims distributed in accordance with Paragraph 2.

a)    $50 Pro-Rata Cash Payment. Class members may submit a Claim for a cash payment from the Common Fund ("Pro-Rata Cash Claims"). The Settlement Administrator will make *pro rata* settlement payments, which may increase or decrease the amount of the cash payment. No documentation or attestation is required.

       b)     <u>Out-of-Pocket Loss Claims</u>. Class members can submit a Claim Form for reimbursement of documented out-of-pocket Monetary Losses reasonably traceable to the Data Incident up to $10,000 per individual ("Out-of-Pocket-Loss Claims"). Out-of-Pocket-Loss Claims will include Monetary Losses related to the Data Incident combined with a written attestation by the Class member that such Monetary Losses were caused by the Data Incident.

       c)     <u>Lost-Time Claims</u>. Class members can submit a Claim Form for reimbursement for time spent remedying issues related to the Data Incident for up to four (4) total hours at a rate of $25.00 per hour capped at $100 ("Lost-Time Claims"). No documentation need be submitted in connection with Lost-Time Claims, but Class members must attest that the time claimed was actually spent as a result of the Data Incident.

     2.2    <u>Business Practices Changes & Confirmatory Discovery</u>. Class Members will also receive the benefit of Defendant's business practice changes, including, but not limited to, (1) enhanced authorization requirements for individuals with access to Defendant's network; (2) providing additional mandatory security awareness training to Defendant's employees and provided reminders to all employees of the password complexity requirements; (3) updating Defendant's internal password reset requirements; (4) adding additional auditing mechanisms to identify weak passwords; (5) converting the mailbox at issue in the Data Incident to a delegated account; (6) enhancing Defendant's multi-factor authentication protocols; (7) shortening retention period for the mailbox at issue in the Data Incident; and (8) engaging a third-party vendor to perform an updated HIPAA security risk assessment.

2.3     Dispute Resolution for Claims. The Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (a) the Claimant is a Class Member; (b) the Claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the Out-of-Pocket-Loss Claim described in Section 2.1; and (c) the information submitted could lead a reasonable person to conclude that it is more likely than not the Claimant has suffered the claimed losses as a result of the Data Incident. The Settlement Administrator may, at any time, request from the Claimant, in writing, additional information as the Settlement Administrator may reasonably require in order to evaluate the Claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, and claims previously made for identity theft and the resolution thereof. For any such Claims that the Settlement Administrator determines to be implausible, the Settlement Administrator will submit those Claims to the Settling Parties (If the Settling Parties do not agree with the Claimant's Settlement Claim, after meeting and conferring, then the Settlement Claim shall be referred for resolution to the Settlement Administrator for final determination.

2.3.1. Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Settlement Administrator shall request additional information and give the Claimant fourteen (14) days to cure the defect before rejecting the Claim. If the defect is not cured, then the Claim will be deemed invalid and there shall be no obligation to pay the defective Claim.

2.3.2 Following receipt of additional information requested by the Settlement Administrator, the Settlement Administrator shall have ten (10) days to accept, in whole or lesser amount, or reject each Claim. If, after review of the Claim and all documentation submitted by the Claimant, the Settlement Administrator determines that such a Claim is facially valid, then the

Claim shall be paid. If the Claim is not facially valid because the Claimant has not provided all information needed to complete and evaluate the Claim, then the Settlement Administrator may reject the Claim without any further action. A defect in one Claim shall not cause rejection of any other valid Claim submitted by the Claimant.

2.3.3. Class <embers shall have ten (10) days from receipt of the offer to accept or reject any offer of partial payment received from the Settlement Administrator.

2.4     <u>Settlement Expenses</u>. All costs for notice to the Class Members as required under ¶ 3.2, for the administration provided pursuant to ¶¶ 9.1–9.4 and the costs of Dispute Resolution described in ¶¶ 2.3, 9.1 shall be paid out of the Common Fund.

2.5     <u>Class Certification</u>. The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

**3.** **Order of Preliminary Approval and Publishing of Notice of Final Approval Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel and Defendant's Counsel shall jointly submit this Settlement Agreement to the Court, and Proposed Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form substantially similar to **Exhibit C** in both terms and cost, requesting, *inter alia:*

a)      certification of the Class for settlement purposes only pursuant to ¶ 2.5;

b)      preliminary approval of the Settlement Agreement as set forth herein;

c)      appointment of Proposed Class Counsel as Class Counsel;

d)      appointment of Plaintiffs as Class Representatives;

e)      approval of the Short Notice to be mailed to Class members in a form substantially similar to the one attached as **Exhibit D** this Settlement Agreement;

f)      approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to this Settlement Agreement, which, together with the Short Notice, shall include a fair summary of the Parties' respective litigation positions, statements that the settlement and notice of settlement are legitimate and that the Class Members are entitled to benefits under the settlement, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, instructions for how to obtain the Settlement Benefits, the process and instructions for making Claims to the extent contemplated herein, and the date, time and place of the Final Approval Hearing;

17

g)  approval of a Claim Form to be used by Class Members to make a claim in a form substantially similar to the one attached as **Exhibit A** to this Settlement Agreement; and

h)  appointment of Kroll Settlement Administration, LLC as the Settlement Administrator.

The Short Notice, Long Notice, and Claim Form have been reviewed and approved by the Settlement Administrator, but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval. Immaterial revisions to these documents may also be made prior to dissemination of notice.

3.2    Costs for providing notice to the Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Settlement Administration shall be paid from the Common Fund. Attorneys' fees, costs, and expenses of Proposed Class Counsel, and Service Awards to Class Representatives, as approved by the Court, shall also be paid from the Common Fund. Notice shall be provided to Class Members by the Settlement Administrator as follows:

a)  *Class Member Information*: No later than fourteen (14) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the name, email (if any), and last known physical address of each Class Member (collectively, "Class Member Information") that Defendant possesses.

b)  For any Class Member whose information does not include an email address, the Settlement Administrator shall mail the Notice. For any Class Member whose information does not include an e-mail address or a valid address, the Settlement

18

Administrator shall use the available information to conduct a reverse look-up search to obtain a physical address to mail the Notice.

c) The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

d) *Settlement Website*: Prior to the dissemination of the Notice to the Class Members, the Settlement Administrator shall establish the Settlement Website that will inform Class members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website, which shall be active within 24 hours of the Notice Date, shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; and (v) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

e) *Short Notice:* On the Notice Date, the Settlement Administrator shall commence disseminating notice to the Class. Within fifteen (15) days thereafter, dissemination of the Notice shall be completed through the following means:

- via email to emails, if any, in Defendant's possession. These emails will include a clear and conspicuous link to access the Claim Form.

19

- if Defendant does not possess the email for any Class Member, via mail to the postal address in Defendant's possession. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS;

- in the event that a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Notice to the forwarding address within ten (10) days of receiving the returned Short Notice;

f) Publishing, on or before the Notice Date, the Claim Form, Long Notice and this Settlement Agreement on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

g) A toll-free help line with an IVR system and a live operator option shall be made available to provide Class Members with additional information about the settlement. The Settlement Administrator also will provide copies of the Long Notice and paper Claim Form, as well as this Settlement Agreement, upon request of a Class Member; and

h) Contemporaneously with seeking Final Approval of the Settlement, Proposed Class Counsel and Defendant shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to

complying with these provisions regarding notice. Defendant's Counsel shall cooperate in providing any necessary information to the Settlement Administrator to complete the foregoing affidavit or declaration.

3.3     The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Settlement Administrator in consultation and agreement with the Settling Parties as may be reasonable and not inconsistent with such approval.

3.4     Proposed Class Counsel and Defendant's Counsel shall request that after Notice is completed the Court hold a hearing (the "Final Approval Hearing") and grant final approval of the settlement set forth herein.

3.5     Defendant will also cause the Settlement Administrator to provide notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

**4.     Opt-Out Procedures**

4.1     Each Person wishing to opt-out of the Class shall individually sign and timely submit written notice of such intent to the designated post office box established by the Settlement Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked no later than the Opt-Out Date, as defined in ¶ 1.26.

4.2     All Persons who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in ¶ 1.26 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not validly opt-out of the Settlement Class shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date, the Settlement Administrator receives more than 50 Opt-Outs from the Settlement, Proposed Class Counsel and Defendant's Counsel shall confer on the Opt-Outs received, including the volume of Opt-Outs and representations made by Persons opting out. In the event that the Settlement Administrator has received more than 250 Opt-Outs from the Settlement from Class Members, Defendant shall have the right to terminate the Settlement Agreement in its entirety and shall notify Plaintiffs of Defendant's intention to terminate the Settlement Agreement within 10 days of the Opt-Out Date. If Defendant voids this Settlement Agreement under this paragraph then, (a) the Parties shall be restored to their respective positions in the Litigation, and the Parties shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the settlement shall have no further force and effect with respect to the Parties, and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated and null and void, *nunc pro tunc*.

## 5.     Objection Procedures

5.1     Each Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date, as defined in ¶ 1.25. Such notice shall state: (a) the objector's full name and address; (b) the case name and docket number, *Tate, et al. v. EyeMed Vision Care, LLC*, Case No. 1:21-cv-36, pending in the United States District Court for the Southern District of Ohio, Western Division; (c) information identifying the objector as a Class member, including proof that the objector is a member of the Class (*e.g.*, copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining

why the objector believes he or she is a Class Member); (d) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (e) the identity of any and all counsel representing the objector in connection with the objection; (f) a statement whether the objector and/or his or her counsel will appear at the Final Approval Hearing; and (g) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Bryan L. Bleichner, Chestnut Cambronne PA, 100 Washington Ave. S., Ste. 1700, Minneapolis, MN 55401 and to Lori G. Feldman, George Feldman McDonald, PLLC, 102 Half Moon Bay Drive, Croton-on-Hudson, NY 10520, as Class Counsel; and Paul G. Karlsgodt, Baker & Hostetler LLP, 1801 California Street, Suite 4400, Denver, CO 80202-2662, as counsel for Defendant. The objector or his or her counsel may also file objections with the Court through the Court's ECF system or submitting them to the Clerk of Court, with service on Class Counsel and Defendant's Counsel made through the ECF system. For all objections mailed to Class Counsel and counsel for Defendant, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement. Any Motion for Final Approval of Class Action Settlement will be filed no later than 14 days before the Final Approval Hearing.

5.2     Any Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement, including any Claims, shall be through the

provisions of ¶¶ 2.3, 5.1, 9.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

### 6. Releases

6.1     Upon the Effective Date, each Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims, including all Unknown Claims, as against all Released Parties. Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, continuing in, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. Any other claims or defenses Plaintiffs and each and all of the Class Members may have against Defendant that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Data Incident, the Litigation, or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

### 7. Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Awards to Plaintiffs

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or Service Awards to Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that reasonable attorneys' fees, costs, expenses, and Service Awards to Plaintiffs as may be agreed to by Defendant and Class Counsel and as ordered by the Court shall

be paid from the Common Fund. Defendant and Class Counsel then negotiated and agreed to the procedure as set forth herein.

7.2     Class Counsel will move the Court for an award of attorneys' fees not to exceed one-third (1/3) of the Common Fund, or approximately $1,666,666.67 plus reasonable litigation expenses not to exceed $50,000.00 to be paid from the Common Fund. Class Counsel shall allocate and distribute any amounts of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel and Plaintiffs' Counsel. Plaintiffs' motion for attorneys' fees, expenses, and class representative service awards will be filed no later than 14 days before the Objection and Opt-Out Deadlines.

7.3     Subject to Court approval, Plaintiffs intend to request a Service Award in the amount of $2,500 to each individual Plaintiff, also to be paid from the Common Fund. Any Service Award that is awarded by the Court shall be paid within fourteen (14) days of the Effective Date.

7.4     If awarded by the Court, the attorneys' fees and expenses as set forth in ¶ 7.2 will be distributed to Class Counsel, within thirty (30) days after the Effective Date. Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and Service Awards to Plaintiffs consistent with ¶ 7.2.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the Service Awards to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or Service Awards ordered

by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.      Common Fund**

8.1      <u>Deposits</u>. Within sixty (60) days of the Preliminary Approval Order, Defendant shall deposit the sum of five million dollars ($5,000,000.00) into an escrow account established and administered by the Settlement Administrator. This shall constitute the Common Fund and is non-reversionary. As of the Effective Date, all rights of Defendant in or to the Common Fund shall be extinguished, except in the event this Settlement Agreement is terminated as provided herein.

8.2      <u>Custody of the Common Fund</u>. The Common Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Common Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Common Fund in the event this Settlement Agreement is terminated as provided herein.

8.3      <u>Treasury Regulations and Fund Investment</u>. The Parties agree that the Common Fund is intended to be maintained as a qualified settlement fund ("QSF") within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Common Fund and paying from the Common Fund any taxes owed with respect to the Common Fund. The Parties agree that the Common Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Common Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Common Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation at a financial institution determined by the

Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Common Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

8.4    Use of the Common Fund and Order of Distribution. As further described in this Agreement, the Common Fund shall be used by the Settlement Administrator to pay for the following: (a) taxes and tax-related expenses, (b) attorneys' fees, (c) Class Counsel's litigation expenses, (d) Costs of Settlement Administration, (e) Service Awards, (f) Cash Payments, (g) Lost-Time Claims, and (h) Out-of-Pocket-Loss Claims. All taxes relating to the Common Fund shall be paid out of the Common Fund, shall be considered a Cost of Settlement Administration, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Common Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

The Settlement Administrator shall first use the available funds in the Common Fund to pay taxes and tax-related expenses. Next, the Settlement Administrator shall use the available funds in the Common Fund to pay Costs of Settlement Administration. Next, the Settlement Administrator shall make payment of the Service Awards to the Plaintiffs. Next, the Settlement Administrator shall use the available funds in the Common Fund to cover, in order, Class Counsel's attorneys' fees and expenses as may be awarded by the Court. Next, the Settlement Administrator shall make payment of Valid Claims for Out-of-Pocket Loss Claims from the Common Fund. Next, the Settlement Administrator shall make payment of all Valid Claims for Lost-Time Claims. Next, the Settlement Administrator shall make payments of all Claims for Pro-

Rata Cash Claims on a *pro rata* basis to the Class Members who submit a Valid Claim for a Pro-Rata Cash Claim.

In the event that the aggregate amount of all Valid Claims for Common Fund benefits exceeds the then-existing balance of the Common Fund, then the value of the Out-of-Pocket-Loss Claims, Lost-Time Claims, and Pro-Rata Cash Claims to be paid to each Common Fund Class member shall be reduced in the foregoing order, on a *pro rata* basis, such that the aggregate value of all Valid Claims does not exceed the then-existing Common Fund balance.

Following payment of all the above in the above order, any amount remaining in the Common Fund shall be considered for the economic feasibility of redistribution to those Common Fund Class members who submitted a Valid Claim for benefits. Redistribution must be agreed to in writing by the Settling Parties. Any remaining funds in the Common Fund, following a decision by the Settling Parties on redistribution, shall be paid to the unclaimed property funds of the various states in which Class Members reside in proportion to the percentage of Class Members in the respective states; unless the remaining funds in the Common Fund are so de minimus that the Costs of Settlement Administration for distributing to the various unclaimed property funds is economically impractical as determined in the sole discretion of the Settling Parties, in which case the remaining funds will be paid to a non-profit charitable organization to be approved by the Court. No amounts may be withdrawn from the Common Fund unless expressly authorized by this Agreement or approved by the Court.

The Parties and their respective counsel have made no representation or warranty with respect to any tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Common Fund. Each Class Representative and Class Member shall be solely responsible for the federal, state, and

local tax consequences to him, her, they, or it of the receipt of funds from the Common Fund pursuant to this Agreement.

8.5    Taxes. All taxes relating to the Common Fund shall be paid out of the Common Fund, shall be considered a Cost of Settlement Administration, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Common Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to any tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Common Fund. Each Class Representative and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, they, or it of the receipt of funds from the Common Fund pursuant to this Agreement.

**9.    Administration of Claims**

9.1    The Settlement Administrator shall administer and calculate the claims submitted by Class Members under ¶ 2.1. Class Counsel and Defendant shall be given reports as to both claims and distribution and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Settlement Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the Dispute Resolution process set forth in ¶ 2.3. All Claims agreed to be paid in full by Defendant shall be deemed Valid Claims.

9.2    Payment of Valid Claims, whether via mailed check or electronic distribution, shall be made within thirty (30) days of the Effective Date.

9.3    All Class Members who fail to timely submit a Claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

9.4    No Person shall have any claim against the Settlement Administrator, Defendant, Class Counsel, Plaintiffs, and/or Defendant's counsel based on distributions of benefits to Class Members.

## 10.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

10.1    The "Effective Date" of the settlement shall be conditioned on the occurrence of all of the following events:

a)    Defendant has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

b)    the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

c)    the Judgment has become Final, as defined in ¶ 1.17.

10.2    If all conditions specified in ¶ 1.17 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3    Within ten (10) days after the Opt-Out Date, the Settlement Administrator shall furnish to Class Counsel and to Defendant's Counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

10.4    In the event that the Settlement Agreement or the releases set forth in ¶ 6.1 above are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or Service Awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Defendant shall be obligated to pay amounts already billed or incurred for costs of notice to the Class, Settlement Administration, and Dispute Resolution pursuant to ¶¶ 2.3, 9.1–9.4 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 11.    Miscellaneous Provisions

11.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2    The Settling Parties intend this settlement to be a final and complete resolution of all claims and disputes between them with respect to the Data Incident and this Litigation. The settlement compromises claims, including but not limited to all Released Claims, that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

11.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

32

11.5     The exhibits to this Settlement Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

11.6     This Settlement Agreement, including all exhibits hereto, contains the entire understanding between Defendant and Plaintiffs, individually and on behalf of the Settlement Class and all Released Entities, regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between the Parties in connection with the payment of the Litigation settlement. Except as otherwise provided herein, each of the Parties shall bear its own costs. This Settlement Agreement supersedes all previous agreements made between the Parties as to the subjects of the Settlement Agreement.

11.7     Class Counsel, on behalf of the Class, and Defendant's counsel, on behalf of Defendant, are expressly authorized to take all appropriate actions required or permitted to be taken by the Parties pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Parties which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Parties.

11.8     Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

11.9     The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

11.10    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

11.11    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement. The Court shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

11.12    As used herein, "he" means "he, she, they, or it;" "his" means "his, hers, theirs, or its," and "him" means "him, her, them, or it."

11.13    The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Ohio.

11.14    All dollar amounts are in United States dollars (USD).

11.15    If a Class Member opts to receive settlement benefits via mailed check, cashing the settlement check is a condition precedent to any Class Member's right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Class Member shall have one hundred and eighty (180) days after the

34

Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Class Member's right to receive monetary relief shall be extinguished, and there shall be no obligation to make payments to the Class Member for expense reimbursement or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days after the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.16    The Settlement Website shall be deactivated ninety (90) days after the Effective Date.

11.17    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Plaintiffs:                                      Attorney(s) for Defendants:


_____
**Chandra Tate**                                 _____
                                                 Carrie Dettmer Slye
                                                 BAKER & HOSTETLER LLP
                                                 312 Walnut Street, Suite 3200
                                                 Cincinnati, Ohio 45202-4074
_____                Phone: (513) 929-3400
**Barbara Whittom**                              Fax: (513) 929-0303
                                                 Email: cdettmerslye@bakerlaw.com
_____
**Alexus Wynn**                                  Paul G. Karlsgodt
                                                 BAKER & HOSTETLER LLP
                                                 1801 California Street
_____                Suite 4400
Lori G. Feldman                                  Denver, CO 80202
GEORGE FELDMAN McDONALD, PLLC                     Phone: (303) 764-4013
102 Half Moon Bay Drive                          Fax: (303) 861-7805
Croton-on-Hudson, New York 10520                 Email: pkarlsgodt@bakerlaw.com
Phone : (917) 983-9321
Fax : (888) 421-4173                             Colby M. Everett
Email : LFeldman@4-Justice.com                   BAKER & HOSTETLER LLP
                                                 1801 California Street
David J. George                                  Suite 4400
Brittany L. Brown                                Denver, CO 80202
GEORGE FELDMAN McDONALD, PLLC                     Phone: (303) 861-0600
9897 Lake Worth Road, Suite #302                 Fax: (303) 861-7805
Lake Worth, FL 33467                             Email: ceverett@bakerlaw.com
Phone : (561) 232-6002
Fax : (888) 421-4173                             ***Counsel for Defendant***
Email : DGeorge@4-Justice.com                    ***EyeMed Vision Care, LLC***
         BBrown@4-Justice.com

Bryan L. Bleichner
Christopher P. Renz
CHESTNUT CAMBRONNE PA
100 Washington Ave. South
Suite 1700
Minneapolis, MN 55401
Phone: 612-339-7300
Email: bbleichner@chestnutcambronne.com
       crenz@chestnutcambronne.com


***Co-Lead Counsel for Plaintiffs***
***and the Proposed Settlement Class***

Plaintiffs:                                          Attorney(s) for Defendants:

_____

**Chandra Tate**

_____

**Barbara Whittom**

_____

**Alexus Wynn**

/s/ Lori G. Feldman, by
/s/ Terence R. Coates (per e-mail authority)
_____
Lori G. Feldman
GEORGE FELDMAN McDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone : (917) 983-9321
Fax : (888) 421-4173
Email : LFeldman@4-Justice.com

David J. George
Brittany L. Brown
GEORGE FELDMAN McDONALD, PLLC
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone : (561) 232-6002
Fax : (888) 421-4173
Email : DGeorge@4-Justice.com
          BBrown@4-Justice.com

Bryan L. Bleichner
Christopher P. Renz
CHESTNUT CAMBRONNE PA
100 Washington Ave. South
Suite 1700
Minneapolis, MN 55401
Phone: 612-339-7300
Email: bbleichner@chestnutcambronne.com
          crenz@chestnutcambronne.com

***Co-Lead Counsel for Plaintiffs
and the Proposed Settlement Class***

_____

Carrie Dettmer Slye
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074
Phone: (513) 929-3400
Fax: (513) 929-0303
Email: cdettmerslye@bakerlaw.com

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
Phone: (303) 764-4013
Fax: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

Colby M. Everett
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
Phone: (303) 861-0600
Fax: (303) 861-7805
Email: ceverett@bakerlaw.com

***Counsel for Defendant
EyeMed Vision Care, LLC***

Plaintiffs:

_____

**Chandra Tate**

_____

**Barbara Whittom**

_____

**Alexus Wynn**

_____

Lori G. Feldman
GEORGE FELDMAN McDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone : (917) 983-9321
Fax : (888) 421-4173
Email : LFeldman@4-Justice.com

David J. George
Brittany L. Brown
GEORGE FELDMAN McDONALD, PLLC
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone : (561) 232-6002
Fax : (888) 421-4173
Email : DGeorge@4-Justice.com
          BBrown@4-Justice.com

Bryan L. Bleichner
Christopher P. Renz
CHESTNUT CAMBRONNE PA
100 Washington Ave. South
Suite 1700
Minneapolis, MN 55401
Phone: 612-339-7300
Email: bbleichner@chestnutcambronne.com
          crenz@chestnutcambronne.com

***Co-Lead Counsel for Plaintiffs
and the Proposed Settlement Class***

Attorney(s) for Defendants:

_____

Carrie Dettmer Slye
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202-4074
Phone: (513) 929-3400
Fax: (513) 929-0303
Email: cdettmerslye@bakerlaw.com

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
Phone: (303) 764-4013
Fax: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

Colby M. Everett
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202
Phone: (303) 861-0600
Fax: (303) 861-7805
Email: ceverett@bakerlaw.com

***Counsel for Defendant
EyeMed Vision Care, LLC***

36

**SETTLEMENT TIMELINE**

| **From Order Granting Preliminary Approval** | |
|---|---|
| Defendant provides list of Class Members to the Settlement Administrator | +14 days |
| Notice Date | +45 days |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards | +91 days (-14 days before the Objection and Opt-Out Deadlines) |
| Objection Deadline | +105 days (+60 days after the Notice Date) |
| Opt-Out Deadline | +105 days (+60 days after the Notice Date) |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | +115 days (+10 days after the Objection and Opt-Out Deadlines) |
| Claims Deadline | +135 days (+90 days after the Notice Date) |
| | |
| **Final Approval Hearing** | _____, 2025 |
| Motion for Final Approval | -14 days |
| | |
| **From Order Granting Final Approval** | |
| Effective Date | +31 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Class Representative Service Awards | +14 days after the Effective Date |
| Payment of Claims to Class Members | +30 days |
| Payment of Attorneys' Fees and Expenses | +30 days after the Effective Date |
| Settlement Website Deactivation | +90 days |

# EXHIBIT

# A

## CLAIM FORM FOR THE EYEMED VISION CARE DATA INCIDENT
## CLASS ACTION SETTLEMENT BENEFITS

**USE THIS FORM TO MAKE A CLAIM FOR A PRO RATA CASH PAYMENT, LOST TIME PAYMENT, AND/OR OUT-OF-POCKET LOSS PAYMENT**

For more information, call 1-888-888-8888 or visit the website *www.eyemeddatasettlement.com*
*Para una notificación en Español, pueda llamar 1-888-888-8888 o visitar nuestro sitio de web*
***www.eyemedsdatasettlement.com.***

**The DEADLINE to submit this Claim Form online (or have it postmarked for mailing) is**

**[XXXX XX, 202X]**

### I.     GENERAL INSTRUCTIONS

If you were notified that your private information was potentially compromised in a June 2020 data incident experienced by EyeMed Vision Care, LLC ("EyeMed"), you are a Class Member. The event that caused your data to be lost is referred to here as the "Data Incident."

The Settlement establishes a $5,000,000.00 fund to compensate Class Members for their lost time and out-of-pocket losses or expenses, as well as for the costs of notice and administration, service awards to class representatives and attorneys' fees and expenses as awarded by the Court. As a Class Member, you are eligible for cash payments as reimbursement for your time and money spent in response to the Data Incident (such as money spent on credit monitoring), as well as for any money you lost as a result of incidents of fraud or identity theft caused by the Data Incident. You must fill out this claim form to receive these benefits. **You may submit a claim for one or more of these benefits, including that you may receive each of a lost time payment, out-of-pocket loss payment, and/or pro rata cash payment. All payments for valid claims under the Settlement, including those for Lost Time and Out-of-Pocket Expenses, may be reduced pro rata based on the total number of valid claims.**

The benefits are as follows:

**a.  $50 Estimated Pro Rata Cash Payment**

After distributing funds for the claims payments set forth above to claimants, as well as attorneys' fees, Class Counsel's expenses, and Administrative Fees, if there is any money left over, the Settlement Administrator will make pro rata settlement payments of the remaining Settlement Fund to each Settlement Class Member who submits a cash payment claim. The remaining amount of the Settlement Fund will be distributed *pro rata* for each Settlement Class Member who submits a valid claim, which may increase or decrease the estimated $50 cash payment amount.

**b.  Lost Time Claims**

You may submit a claim for reimbursement for time spent resolving issues attributable to the Data Incident. You will be reimbursed at $25/hour of time spent for a maximum of 4 hours, **up to $100 in total.** By filling out this claim form, you must attest to the amount of time you spent attempting to mitigate the effects of the Data Incident on your life. This can include, for example, time spent on the phone with banks, time spent dealing with replacement card issues or reversing fraudulent charges, time spent monitoring accounts, or time spent freezing your credit. **You do not have to include documentation of your lost time. Instead, you can swear, under penalty of perjury, to the amount of time you spent**.

**c.  Out-of-Pocket Expenses**

You are eligible to receive reimbursement for money you paid to protect yourself from the Data Incident such as money spent on a credit monitoring service. You are also eligible to receive reimbursement for money you lost as a

result of fraud or identity theft, if that money has not been reimbursed from another source. This includes:

- Unreimbursed losses relating to fraud or identity theft;
- Professional fees including attorneys' fees, accountants' fees, and fees for credit repair services;
- Costs associated with freezing or unfreezing credit with any credit reporting agency;
- Credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission;
- Parking expenses or other transportation expenses (including the cost of fuel) for trips to a financial institution to address fraudulent charges or receive a replacement payment card;
- Instances of verified fraud such as fraudulent bank or credit card charges, fraudulent tax filings, fraudulent opening/closing of bank or credit accounts, unemployment filings, or other fraudulent actions taken using your information from the Data Incident; and
- Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.
- Other expenses that are reasonably attributable to the Data Incident that were not reimbursed.

These Out-of-Pocket Expenses must be documented; you must submit copies of documents supporting your claims, such as receipts or other documentation. "Self-prepared" documents, such as handwritten receipts, will not count as documentation, but you can submit them as clarification to other, official documents.

### **Completing the Claim Form**

This Claim Form may be submitted online at **www.eyemeddatasettlement.com** or completed and mailed to the address below. Please type or legibly print all requested information in blue or black ink. If submitting by U.S. mail, mail your completed Claim Form, including any supporting documentation, to:

EyeMed Data Incident
Settlement Administrator
P.O. Box XXXX XXXXX, XX XXXXX

## II.    CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above.

Claimant Name: _____

First Name                                MI      Last Name

Street Address: _____

Street Address Second Line: _____

City: _____ State: _____ Zip Code: _____

Class Member ID: _____

If you received a notice of this Settlement by U.S. mail, your Class Member ID is on the envelope or postcard.
If you received a notice of this Settlement by email, your Class Member ID is in the email.

E-mail Address: _____

[optional] Daytime Phone Number: ( _____ ) _____ - _____

[optional] Evening Phone Number: ( _____ ) _____ - _____

**You may submit a claim for one or more of these benefits:**

### 1)  CASH PAYMENT

**Pro Rata Cash Payment**: Would you like to receive a cash payment under the Settlement? **(circle one)**

**Yes               No**

** The payment under this option will originally be set at $50; however, the value of the cash payment under this option will be increased or decreased pro rata based on the balance of the Settlement Fund after the payment of other benefits and attorneys' and settlement administrator fees and expenses.

### 2)  LOST TIME PAYMENT

☐    Please check this box here if you are electing to seek reimbursement for Lost Time you undertook to prevent or mitigate fraud and identity theft following the announcement of the Data Incident.

Class Members who elect to submit a Claim for Lost Time Payment may claim no more than $100 at $25/hour for up to four hours of time actually spent addressing issues arising from the Data Incident. If you are selecting reimbursement for Lost Time, you must fill in the blanks in this section and sign the certification below.

I _____ [Name] swear and affirm, under penalty of perjury, that I spent the amount of time noted in response to the EyeMed Data Incident.

Specifically, I spent the following number of hours in response to the Data Incident:

(circle only one)                1          2          3          4

### 3) REIMBURSEMENT FOR OUT-OF-POCKET EXPENSES

☐ Please check this box here if you are electing to seek reimbursement for unreimbursed **Out-of-Pocket Expenses** and such claimed losses above will total no more than $10,000.00. You must provide reasonable documentation of the claimed Out-of-Pocket Expenses. Self-attested documentation will not suffice.

<u>**Making a Claim for Out-of-Pocket Expenses**</u>

In order to make a claim for Out-of-Pocket Expenses, <u>**you must**</u> (i) fill out the information below, or fill out a separate sheet to be submitted with this Claim Form; (ii) sign the Certification at the end of this Claim Form (section III); and (iii) include reasonable documentation supporting each claimed loss along with this Claim Form. Out-of-Pocket Expenses need to be deemed fairly traceable to the Data Incident by the Settlement Administrator based on the documentation you provide and the facts of the Data Incident.

<u>**Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**</u>

| Out-of-Pocket Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ☐ Unreimbursed fraud losses or charges. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges.* Your documents: _____ _____ |
| ☐ Professional fees incurred in connection with identity theft or falsified tax returns. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return.* Your documents: _____ _____ _____ |
| ☐ Credit freeze. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services.* Your documents: _____ _____ |
| ☐ Credit Monitoring ordered after receipt of the Data Incident Notice. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services.* Your documents: _____ |
| ☐ Miscellaneous expenses such as notary, fax, postage, fuel, copying, mileage, and long-distance telephone charges. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Examples: Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office) why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Data Incident.* Your documents: _____ _____ |
| ☐ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $☐☐☐☐.☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive federal and/or state tax refund and the amount of any tax refund that you did not receive due to the tax fraud.* Your documents: _____ |

| ☐ Other (provide detailed description). | ☐☐ / ☐☐ / ☐☐  (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form.* Your documents: _____ _____ _____ |
|---|---|---|---|
| ☐ Fraudulent bank or credit card charges. | ☐☐ / ☐☐ / ☐☐  (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Account statement with unauthorized charges highlighted; correspondence with credit card company disputing the charges.* Your documents: _____ _____ |
| ☐ Fraudulent tax filings. | ☐☐ / ☐☐ / ☐☐  (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Accountant bill for re-filing tax return.* Your documents: _____ _____ _____ |
| ☐ Opening of bank accounts and/or credit cards in your name. | ☐☐ / ☐☐ / ☐☐  (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Notification from bank of new credit card or account; correspondence with bank about closing the account.* Your documents: _____ _____ _____ |
| ☐ Government benefits taken in your name. | ☐☐ / ☐☐ / ☐☐  (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Notification of unemployment benefits being taken; correspondence with agency regarding issue.* Your documents: _____ _____ _____ |

If you **do not submit** reasonable documentation supporting a claim for Out-of-Pocket Expenses, or your claim for an Out-of-Pocket Expenses payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, only your claims for Lost Time and/or Pro Rata Cash Payments, if such claims are made, will be considered.

## III.   CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claims for payments under this Settlement are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.

Signature: _____     Date: _____

Print Name: _____

# EXHIBIT

# B

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

*Tate, et al. v. EyeMed Vision Care, LLC*, **Case No. 1:21-cv-36**
<u>A court has authorized this notice. This is not a solicitation from a lawyer.</u>

---

**If You Were Subject to the EyeMed Vision Care, LLC ("EyeMed") Data Incident and Previously Received a Notice Letter Notifying You of the Data Incident, You Could be Eligible for a Payment from a Class Action Settlement**

---

- You may be eligible to receive a payment from a proposed $5,000,000 non-reversionary class action settlement (the "Settlement Fund").
- The class action lawsuit concerns a data incident experienced by EyeMed in June 2020 (the "Data Incident") involving EyeMed in which it was determined that an unauthorized third party may have gained access to certain EyeMed files containing customers' names, contact details, dates of birth, health insurance account and identification numbers, Medicaid or Medicare numbers, driver's licenses, and other government identification numbers (collectively referred to in this Settlement as "Private Information"). EyeMed denies any wrongdoing and denies that it has any liability but has agreed to settle the lawsuit on a class wide basis.
- To be eligible to make a claim, you must have received a notice letter of the EyeMed Data Incident that occurred in June 2020.
- Eligible claimants under the Settlement Agreement will be eligible to receive one, two, and/or three of the following Settlement benefits:

  ❖ **<u>Pro Rata Cash Payment</u>: $50 (estimated) cash payment from the Settlement Fund that will be increased or decreased pro rata depending on the amount remaining in the Settlement Fund after allocation of the Settlement Fund for reimbursement of documented Out-of-Pocket Expenses, payments for lost time, attorneys' fees and expenses, and Notice and Administrative Expenses.**

  ❖ **<u>Lost Time</u>: Compensation of up to $100 for time spent dealing with issues related to the Data Incident, including but not limited to reviewing your accounts, enrolling in credit protection services, or responding to fraud, identity theft, or other alleged misuse of your personal information that is fairly traceable to the Data Incident. Claims for lost time can be combined with claims for Out-of-Pocket Expenses but are subject to the $10,000.00 cap. All payments to Class Members for valid claims under the Settlement might be reduced pro rata, including those for Out-of-Pocket Expenses and Lost Time, depending on the total number of valid claims submitted.**

  ❖ **<u>Out-of-Pocket Expenses</u>: Reimbursement for the actual amount of unreimbursed Out-of-Pocket Expenses or expenses up to $10,000, with supporting documentation of the monetary losses or expenses; and/or**

- For more information or to submit a claim visit **www.eyemeddatasettlement.com** or call <mark>1-###-###-####</mark> Monday through Saturday, between 8:30 a.m. and 5:00 p.m. C.T.
- **Please read this notice carefully. Your legal rights will be affected, and you have a choice to make at this time.**

| | Summary of Legal Rights | Deadline(s) |
|---|---|---|
| **Submit a Claim Form** | The only way to receive payment. | Submitted or Postmarked on or Before <mark>_____, 2025</mark> |
| **Exclude Yourself By Opting Out of the Class** | Receive no payment. If you are a Class Member, you must exclude yourself from this class action settlement in order to retain your right to bring any other lawsuit against EyeMed for the same claims. | Submitted or Postmarked on or Before <mark>_____, 2025</mark> |
| **Object to the Settlement and/or Attend the Fairness Hearing** | You can write the Court about why you agree or disagree with the Settlement. The Court cannot order a different Settlement. You can also ask to speak to the Court at the Final Approval Hearing on <mark>_____, 2025</mark> about the fairness of the Settlement, with or without your own attorney. | Received on or Before <mark>_____, 2025</mark> |
| **Do Nothing** | Receive no payment. Give up rights to bring your own personal lawsuit against EyeMed and others if you are a Class Member. | No Deadline. |

- Your rights and options as a Class Member – and the deadlines to exercise your rights – are explained in this notice.
- The Court still will have to decide whether to approve the Settlement. Payments to Class Members will be made if the Court approves the Settlement and after any possible appeals are resolved.

## What This Notice Contains

**Basic Information**.................……………………………………………………..…..…

**Who is in the Settlement**……………………………………………..…………..…

**The Settlement Benefits—What You Get if You Qualify**…………………………...…..

**How do You Submit a Claim**…………………….…………………………....…

**What Does Defendant Get**………..…………………….…………………………...……

**Excluding Yourself from the Settlement**………………………………...…..…..

**Objecting to the Settlement**……………………………….....…………………...…

**The Lawyers Representing You**…………………………………………………….........

**The Court's Fairness Hearing** ...............…………............................................................

**If You Do Nothing**………………………………………………..………...………......

**Getting More Information**……………………………………………………...………....

## BASIC INFORMATION

| 1.     Why is there a notice? |
|---|

The Court authorized this notice because you have a right to know about the Settlement, and all of your options, before the Court decides whether to give "final approval" to the Settlement. This notice explains the nature of the lawsuit that is the subject of the Settlement, the general terms of the Settlement, and your legal rights and options.

Judge Douglas R. Cole of the United States District Court for the Southern District of Ohio is the judge for the case captioned as *Tate, et al. v. EyeMed Vision Care, LLC*, Case No. 1:21-cv-36. The individuals who brought the lawsuit, Plaintiffs Chandra Tate, Barbara Whittom, and Alexus Wynn, are called the Plaintiffs. The entity being sued, EyeMed, is called the Defendant.

| 2.     What is this lawsuit about? |
|---|

The lawsuit claims that Defendant was responsible for the Data Incident and that Plaintiffs were injured as a result of the Data Incident.

Defendant denies these claims and says it did not do anything wrong. No court or other judicial entity has made any judgment or other determination that Defendant has any liability for these claims or did anything wrong.

| 3.     Why is this lawsuit a class action? |
|---|

In a class action, one or more people called class representatives or representative plaintiffs sue on behalf of all people who have similar claims. Together, all of these people are called a class, and the individuals are called class members. One court resolves the issues for all class members, except for those who exclude themselves from the class.

| 4.     Why is there a Settlement? |
|---|

The Court has not decided in favor of the Plaintiffs or Defendant. Instead, both sides agreed to the Settlement. The Settlement avoids the cost and risk of a trial and related appeals, while providing benefits to members of the Class ("Class Members"). The Class Representatives appointed to represent the Class and the attorneys for the Class ("Class Counsel," see Question 18) think the Settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT?

| 5.     How do I know if I am part of the Settlement? |
|---|

You are affected by the Settlement and potentially a member of the Class if you reside in the United States and your Private Information may have been compromised in connection with the Data

Incident, including if you were mailed a notification by or on behalf of EyeMed regarding the Data Incident.

Only Class Members are eligible to receive benefits under the Settlement.  Specifically  excluded from the Class are (1) the judge presiding over the class action lawsuit and his direct family members; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

## 6.    What if I am not sure whether I am included in the Settlement?

If you are not sure whether you are included in the Settlement, you may call 1-###-###-#### with questions.  You may also write with questions to:

EyeMed Settlement Administrator
address
address
**www.eyemeddatasettlement.com**

# THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

## 7.    What does the Settlement provide?

The Settlement provides that Defendant will fund the following payments up to a total of $5,000,000: (a) a pro rata estimated $50 payment, subject to adjustment as set forth below; (b) $25 per hour for up to 4 hours, up to a total of $100, for Class Members who attest that the time claimed was actually spent as a result of the Data Incident; and (c) up to $10,000 for reimbursement of your documented Out-of-Pocket Expenses reasonably traceable to the Data Incident.

The estimated $50 pro rata payment will be dispersed after the distribution of attorneys' fees, Class Counsel's litigation expenses, Notice and Administrative Expenses, service awards to Class Representatives, and other Settlement benefits to claimants. The other Settlement benefits are also subject to pro rata reduction as needed in the event that the total claims exceed the $5,000,000 cap on payments to be made by Defendant, and payments may also be increased  on a pro rata basis until the Settlement Fund is distributed. Payment of (1) attorneys' fees, costs, and expenses (see Question 19) and (2) the costs of notifying the Class and administering the Settlement will also be paid out of the Settlement Fund.

The Settlement also provides for Defendant's business practice changes, including, but not limited to, (1) enhanced authorization requirements for individuals with access to Defendant's network; (2) providing additional mandatory security awareness training to Defendant's employees and provided reminders to all employees of the password complexity requirements; (3) updating Defendant's internal password reset requirements; (4) adding additional auditing mechanisms to identify weak passwords; (5) converting the mailbox at issue in the Data Incident to a delegated account; (6) enhanced Defendant's multi-factor authentication protocols; (7) shortening retention period for the mailbox at issue in the Data Incident; and (8) engaging a third-party vendor to perform an updated HIPAA security risk assessment.

| 8. | What payments are available for reimbursement under the Settlement? |
|---|---|

Class Members who submit a claim are eligible to receive:

a) A potential residual cash payment of the remainder funds, which is estimated to be $50 but may adjusted upward or downward pro rata based on how many other claims are made.

b) Compensation for time spent (lost time) remedying issues related to the Data Incident, up to 4 hours at $25.00/hour for time spent in response to the Data Incident for a total amount of up to $100.

c) Reimbursement of actual, documented, unreimbursed Out-of-Pocket Expenses resulting from the Data Incident (up to $10,000 in total), such as the following incurred on or after June 24, 2020:
   • Unreimbursed losses relating to fraud or identity theft;
   • Professional fees including attorneys' fees, accountants' fees, and fees for credit repair services;
   • Costs associated with freezing or unfreezing credit with any credit reporting agency;
   • Credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission;
   • Parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card;
   • Instances of verified fraud such as fraudulent bank or credit card charges, fraudulent tax filings, fraudulent opening/closing of bank or credit accounts, unemployment filings, or other fraudulent actions taken using your information from the Data Incident;
   • Miscellaneous expenses such as notary, fax, postage, copying, mileage, fuel, and long-distance telephone charges; and
   • Other expenses that are reasonably attributable to the Data Incident that were not reimbursed.

## HOW DO YOU SUBMIT A CLAIM?

| 9. | How do I get a benefit? |
|---|---|

To receive a benefit under the Settlement, you must complete and submit a claim for that benefit (a "Claim"). Every Claim must be made on a form ("Claim Form") available at **www.eyemeddatasettlement.com** or by calling 1-###-###-####. Claim Forms will also be sent to Class Members as part of the postcard notice and tear-off Claim Form that will be mailed to Class Members. Read the instructions carefully, fill out the Claim Form, provide the required documentation, and submit it according to the instructions on the Claim Form.

| 10. | How will claims be decided? |
|---|---|

The Settlement Administrator will decide whether and to what extent any Claim made on each Claim Form is valid. The Settlement Administrator may require additional information. If you do not provide the additional information in a timely manner, then the Claim will be considered invalid and will not be paid.

| 11. | When will I get my payment? |
|---|---|

The Court will hold a Final Approval Hearing on _____, 2025 at _____.m. EST to

- 5 -

decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals from that decision and resolving those can take time, perhaps more than a year. It also takes time for all the Claim Forms to be processed. Please be patient.

## WHAT DOES DEFENDANT GET?

**12. What am I giving up as part of the Settlement?**

The Defendant gets a release from all claims covered by this Settlement. Thus, if the Settlement becomes final and you do not exclude yourself from the Settlement, you will be a Class Member and you will give up your right to sue Defendant and other persons ("Released Entities") as to all claims ("Released Claims") arising out of or relating to the Data Incident. This release is described in the Settlement Agreement, which is available at **www.eyemeddatasettlement.com**. If you have any questions you can talk to the law firms listed in Question 18 for free or you can talk to your own lawyer.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be part of this Settlement, then you must take steps to exclude yourself from the Class. This is sometimes referred to as "opting out" of the Class.

**13. If I exclude myself, can I get a payment from this Settlement?**

No. If you exclude yourself you will not be entitled to receive any benefits from the Settlement, but you will not be bound by any judgment or release in this case.

**14. If I do not exclude myself, can I sue Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Defendant (and any other Released Parties) for the claims that this Settlement resolves. You must exclude yourself from the Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you want to exclude yourself, then do not submit a Claim Form to ask for any benefit under the Settlement.

**15. How do I exclude myself from the Settlement?**

To exclude yourself, send a letter that says you want to be excluded or opt-out from the Settlement in *Tate, et al. v. EyeMed Vision Care, LLC*, Case No. 1:21-cv-36, United States District Court, Southern District of Ohio. The letter must: (a) state your full name, address, and telephone number; (b) contain your personal and original signature or the original signature of a person authorized by law to act on your behalf; and (c) state unequivocally your intent to be excluded from the Settlement. You must mail your exclusion request postmarked by _____, 2025, to:

EyeMed Data Incident
Settlement Administrator
Attn: Exclusion Request
address
address

## OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court that I do not like the Settlement?**

You can tell the Court that you do not agree with the Settlement or some part of it by objecting to the Settlement. The Court will consider your views in its decision on whether to approve the Settlement. The Court can only approve or deny the Settlement and cannot change its terms. To object, you must mail your objection to the Clerk of the Court and the Settlement Administrator, at the mailing addresses listed below, postmarked by **no later** than the Objection Deadline, _____, **2025**:

| Court | Settlement Administrator |
|---|---|
| Office of the Clerk<br>Potter Stewart U.S. Courthouse<br>Room 103<br>100 East Fifth Street<br>Cincinnati, Ohio 45202 | EyeMed Settlement<br>P.O. Box<br>(City, State Zip) |

Your objection must be written and must include all of the following: (i) the case name and docket number, *Tate, et al. v. EyeMed Vision Care, LLC*, Case No. 1:21-cv-36 (S.D. Ohio); (iii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

**17. What is the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved. You can object only if you are a Class Member. Excluding yourself is telling the Court that you do not want to be part of the Class and do not want to receive any payment from the Settlement. If you exclude yourself, then you have no basis to object because you are no longer a member of the Class and the case no longer affects you. If you submit both a valid objection and a valid request to be excluded, you will be deemed to have only submitted the request to be excluded.

## THE LAWYERS REPRESENTING YOU

**18. Do I have a lawyer in this case?**

Yes. The Court appointed Bryan L. Bleichner of Chestnut Cambronne PA and Lori G. Feldman of George Feldman McDonald, PLLC as Class Counsel to represent the Class. If you want to be represented by your own lawyer, then you may hire one at your own expense.

**19. How will the lawyers be paid and what are the class representative service awards?**

Class Counsel will ask the Court for an award for attorneys' fees up to $1,666,666.66 plus litigation expenses not to exceed $50,000. Defendant has agreed not to object to any award of attorneys' fees, costs, and expenses up to those amounts, to the extent they are approved by the Court. This payment for any attorneys' fees and expenses to Class Counsel will be made out of the Settlement Fund. Any such award would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the Settlement and will be the only payment to them for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

Furthermore, the three Class Representatives will seek up to $2,500.00 each as Service Awards for the time and effort they have expended on behalf of the Class in pursuit of this class action lawsuit and in achieving the proposed $5,000,000 non-reversionary common fund settlement.

Any award for attorneys' fees and expenses for Class Counsel and/or Class Representative Service Awards must be approved by the Court. The Court may award less than the amount requested. Class Counsel's papers in support of final approval of the Settlement will be filed no later than _____, 2025 and their application for attorneys' fees, costs, and expenses and for Class Representative Service Awards will be filed no later than _____, 2025 and will be posted on the Settlement Website.

## THE COURT'S FINAL APPROVAL HEARING

**20. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at _____ m. ET on _____, 2025, Potter Stewart U.S. Courthouse, Room 801, 100 East Fifth Street, Cincinnati, Ohio 45202 or by remote or virtual means as ordered by the Court. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are timely and valid objections, then the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made. The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses. After the hearing the Court will decide whether to approve the Settlement. We do not know how long these decisions will take. The hearing may be moved to a different date or time without additional notice, so Class Counsel recommend checking **www.eyemeddatasettlement.com** or calling 1-###-###-####.

**21. Do I have to attend the hearing?**

No. Class Counsel will present the Settlement Agreement to the Court. You or your own lawyer are welcome to attend at your expense, but you are not required to do so. If you send an objection, you do not have to visit the Court to talk about it. As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 16, the Court will consider it.

**22. May I speak at the hearing?**

You may ask the Court for permission to speak at the final fairness hearing. To do so, you must file an objection according to the instructions in Question 16, including all the information required. Your objection must be **mailed** to the Clerk of the Court and Settlement Administrator postmarked no later than _____, 2025.

## IF YOU DO NOTHING

| 23. | What happens if I do nothing? |
|-----|-------------------------------|

If you do nothing you will not get any money from this Settlement. If the Settlement is granted final approval and the judgment becomes final, and you are a Member of the Class, then you will not be able to start a lawsuit, continue  with a lawsuit, or be part of any other lawsuit against Defendant and the other Released Parties  based on any of the Released Claims related to the Data Incident, ever again.

## GETTING MORE INFORMATION

| 24. | How do I get more information? |
|-----|--------------------------------|

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement itself. A copy of the Settlement Agreement is available at **www.eyemeddatasettlement.com.**   You may also call the Settlement Administrator with questions or to receive a Claim Form at 1-###-###-####.

This Notice is approved by United States District Court for the Southern District of Ohio.

**DO <u>NOT</u> CONTACT THE COURT DIRECTLY IF YOU HAVE QUESTIONS ABOUT THE SETTLEMENT**. Please contact the Settlement Administrator or Class Counsel if you have any questions about the Settlement.

# EXHIBIT

# C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |
|---|---|
| **CHANDRA TATE, BARBARA WHITTOM,** and **ALEXUS WYNN,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **EYEMED VISION CARE, LLC,** <br><br> Defendant. | Case No. 1:21-cv-00036-DRC (Consolidated with Case No. 1:21-cv-55) <br><br> **Judge Douglas R. Cole** |

**[PROPOSED] ORDER GRANTING MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Before this Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The Court has reviewed the Motion and Settlement Agreement between Plaintiffs and Defendant EyeMed Vision Care, LLC ("EyeMed"). After reviewing Plaintiffs' unopposed request for preliminary approval, this Court grants the Motion and preliminarily concludes that the proposed Settlement is fair, reasonable, and adequate.

IT IS HEREBY ORDERED THAT:

1.      The Settlement Agreement,[1] including the proposed notice plan and forms of notice to the Class, the appointment of Plaintiffs Chandra Tate, Barbara Whittom, and Alexus Wynn as the Class Representatives, the appointment of Class Counsel for Plaintiffs and the Class, the approval of Kroll Settlement Administration, LLC ("Kroll") as the Settlement Administrator, the various forms of class relief provided under the terms of the settlement, and the proposed method

---

[1] All capitalized terms used in this Order shall have the same meanings as set for in the Settlement Agreement.

of distribution of settlement benefits are fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing described below.

2.      The Court does hereby preliminarily and conditionally approve and certify, for settlement purposes, the following Class:

> all individuals to whom Defendant issued notice of the Data Incident that certain Personal Data was impacted in the Data Incident. The Class specifically excludes: (i) EyeMed and its officers and directors; (ii) all Persons who timely and validly request exclusion from the Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.[2]

3.      For purposes of settlement, based on the information provided: the Settlement Class is ascertainable; it consists of roughly 692,154 Class Members, satisfying numerosity; there are common questions of law and fact including whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Incident, satisfying commonality; the proposed Class Representatives' claims are typical in that they are members of the Class and allege that they have been damaged by the same conduct as the other members of the Class; the proposed Class Representatives and Class Counsel fully, fairly, and adequately protect the interests of the Class; questions of law and fact common to members of the Class predominate over questions affecting only individual members for settlement purposes; and a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this Action.

4.      The Court appoints Plaintiffs Chandra Tate, Barbara Whittom, and Alexus Wynn as the Class Representatives.

---

[2] "Data Incident" shall mean the cyberattack EyeMed experienced on or about June 24, 2020 giving rise to the Litigation.

5.      The Court appoints Bryan L. Bleichner of Chestnut Cambronne PA and Lori G. Feldman of George Feldman McDonald, PLLC as Class Counsel for the Class.

6.      The Court appoints Kroll as the Settlement Administrator.

7.      A     Final     Approval     Hearing     shall     be     held     before     the     Court on____[date]_____, 2025 at ___[time]_____ for the following purposes:

a.  To determine whether the proposed Settlement is fair, reasonable, and adequate to the Class and should be approved by the Court;

b.  To determine whether to grant Final Approval, as defined in the Settlement Agreement;

c.  To determine whether the notice plan as conducted was appropriate;

d.  To determine whether the claims process under the Settlement is fair, reasonable, and adequate and should be approved by the Court;

e.  To determine whether the Service Awards of $2,500.00 to each of the named Plaintiffs should be approved by the Court;

f.  To determine whether the requested Class Counsel's combined attorneys' fees, of up to one-third of the Settlement Fund ($1,666,666.67) and litigation expenses up to $50,000.00, should be approved by the Court;

g.  To determine whether the settlement benefits are fair, reasonable, and adequate; and

h.  To rule upon such other matters as the Court may deem appropriate.

8.      The Court approves, as to the form and content, the Notices (including the Short Form Notice). Furthermore, the Court approves the implementation of the Settlement Website and the proposed methods of mailing or distributing the notices substantially in the form as presented in the exhibits to the Motion for Preliminary Approval of Class Action Settlement, and finds that

such notice plan meets the requirements of Federal Rules of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice.

9. The Court preliminarily approves the following Settlement Timeline for the purposes of conducting the notice plan, settlement administration, claims processing, and other execution of the proposed Settlement:

### SETTLEMENT TIMELINE

| **From Order Granting Preliminary Approval** | |
|---|---|
| Defendant provides list of Class Members to the Settlement Administrator | +14 days |
| Notice Date | +45 days |
| Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Awards | +91 days (-14 days before the Objection and Opt-Out Deadlines) |
| Objection Deadline | +105 days (+60 days after the Notice Date) |
| Opt-Out Deadline | +105 days (+60 days after the Notice Date) |
| Settlement Administrator Provide List of Objections/Exclusions to the Parties' counsel | +115 days (+10 days after the Objection and Opt-Out Deadlines |
| Claims Deadline | +135 days (+90 days after the Notice Date) |
| | |
| **Final Approval Hearing** | _____, 2025 |
| Motion for Final Approval | -14 days |
| | |
| **From Order Granting Final Approval** | |
| Effective Date | +31 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Class Representative Service Awards | +14 days after the Effective Date |
| Payment of Claims to Class Members | +30 days |
| Payment of Attorneys' Fees and Expenses | +30 days after the Effective Date |
| Settlement Website Deactivation | +90 days |

4

10.     In order to be a timely claim under the Settlement, a Claim Form must be either postmarked or received by the Settlement Administrator no later than 90 days after the Notice Date. Class Counsel and the Settlement Administrator will ensure that all specific dates and deadlines are added to the Notice and posted on the Settlement Website after this Court enters this Order in accordance with the timeline being keyed on the grant of this Order.

11.     Additionally, all requests to opt out or object to the proposed Settlement must be received by the Settlement Administrator no later than 60 days after the Notice Date. Any request to opt out of the Settlement should, to the extent possible, contain words or phrases such as "opt-out," "opt out," "exclusion," or words or phrases to that effect indicating an intent not to participate in the settlement or be bound by this Agreement. Opt-Out notices shall not be rejected simply because they were inadvertently sent to the Court or Class Counsel so long as they are timely postmarked or received by the Court, Kroll, or Class Counsel. Class Members who seek to Opt-Out shall receive no benefit or compensation under this Agreement.

12.     Class Members may submit an objection to the proposed Settlement under Federal Rule of Civil Procedure 23(e)(5). For an Objection to be valid, it must be filed with the Court within 60 days of the Notice Date and include each and all of the following:

(i)     the name of the proceeding;

(ii)    the Class Member's full name, current mailing address, and telephone number;

(iii)   a statement of the specific grounds for the objection, as well as documents supporting the objection;

(iv)    the identity of any attorneys representing the objector;

(v)     a statement regarding whether the Class Member (or his/her attorney) intends to appear at the Final Approval Hearing;

(vi)    a statement identifying all class action settlements objected to by the Class Member in the previous five (5) years; and

(vii)    the signature of the Class Member or the Class Member's attorney.

Any Objection failing to include the requirements expressed above will be deemed to be invalid. Furthermore, any Class Member objecting to the Settlement agrees to submit to any discovery related to the Objection.

13.    All Class Members shall be bound by all determinations and judgments in this Action concerning the Settlement, including, but not limited to, the release provided for in the Settlement Agreement, whether favorable or unfavorable, except those who timely and validly request exclusion from the Class. The persons and entities who timely and validly request exclusion from the Class will be excluded from the Class and shall not have rights under the Settlement Agreement, shall not be entitled to submit Claim Forms, and shall not be bound by the Settlement Agreement or any Final Approval order as to EyeMed in this Litigation.

14.    Pending final determination of whether the Settlement Agreement should be approved, Plaintiffs and the Class are barred and enjoined from commencing or prosecuting any claims asserting any of the Released Claims against EyeMed.

15.    The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the potential Class Members and retains jurisdiction to consider all further requests or matters arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modification as may be agreed to by the Parties or as ordered by the Court, without further notice to the Class.

**IT IS SO ORDERED** this _____ day of _____, 2025.

_____
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT

# D

c/o Settlement Administrator
P.O. Box XXXX
City, State Zip

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, STATE ZIP
PERMIT NO. XXXX

<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

---

## NOTICE OF CLASS ACTION SETTLEMENT

If you received a notice of a data breach from EyeMed Vision Care, LLC, that certain of your Personal Information was impacted in EyeMed's June 2020 Data Incident, you are entitled to submit a claim for monetary compensation under a class action settlement.

**www.eyemeddatasettlement.com**

## WHO IS A CLASS MEMBER?

If in the lawsuit, *Tory et al. v. EyeMed Vision Care LLC*, Case No. 1:21-cv, United States District Court, Southern District of Ohio, you are a Class Member if your personal information was potentially compromised as a result of data incident that EyeMed Vision Care, LLC ("EyeMed") experienced on or around June 24, 2020 (the "Data Incident").

## WHAT ARE THE SETTLEMENT BENEFITS AND TERMS?

Under the Settlement, EyeMed has agreed to pay $5,000,000 into a Settlement Fund that will be distributed to Class Members who submit valid Claims, after deducting Class Counsel's attorneys' fees and expenses and settlement notice and administration costs and service awards, if such awards are approved by the Court. All Class Members may submit Claims to receive cash payments. Class Members who believe they suffered out-of-pocket expenses as a result of the Data Breach may claim up to $10,000 for the reimbursement of sufficiently documented expenses. Class Members who spent time reviewing their personal information as a result of the Data Incident may claim up to $100 for four hours of lost time at $25/hr. An estimated $50 *pro rata* cash payment may be made to claimants if there is a remaining balance in the Settlement Fund after payments for valid Claims, settlement administration costs and expenses, service awards and attorneys' fees and expenses. These cash payment amounts may not be exactly $50, as they will be adjusted upwards or downwards depending on the amount of valid Claims. More information about the types of Claims and how to file them is available at **www.eyemeddatasettlement.com** ("Settlement Website").

## WHAT ARE YOUR RIGHTS AND OPTIONS?

**Submit a Claim Form**. To qualify for a cash payment, you must timely mail a Claim Form that is attached to this notice or timely complete and submit a Claim Form online at **www.eyemeddatasettlement.com**. Your Claim Form must be postmarked or submitted online no later than _____, **2025**. Kroll Settlement Administration, LLC is the Settlement Administrator.

**Opt Out**. You may exclude yourself from the Settlement and retain your ability to sue EyeMed on your own by mailing a written request for exclusion to the Settlement Administrator that is postmarked no later than _____, **2025**. If you do not exclude yourself, then you will be bound by the Settlement and give up your right to sue regarding the Released Claims.

**Object**. If you do not exclude yourself, you have the right to object to the Settlement. Written objections must be signed, postmarked no later than _____, **2025**, and provide the reasons for the objection. Please visit **www.eyemeddatasettlement.com** for more details.

**Do Nothing**. If you do nothing, you will not receive a Settlement payment and will lose the ability to sue regarding the Released Claims. You will be bound by the Court's decision because this is a conditionally certified class action.

**Attend the Final Approval Hearing**. The Court will hold a **Final Approval Hearing at _____ m. EST on _____, 2025** to determine if the Settlement is fair, reasonable, and adequate. All persons who timely object to the Settlement may appear at the Final Approval Hearing.

**Who are the attorneys for the Plaintiffs and the proposed Class?** The Court appointed Bryan L. Bleichner of Chestnut Cambronne PA and Lori G. Feldman of George Feldman McDonald, PLLC as Class Counsel to represent the Class.

**Do I have any obligation to pay attorneys' fees or expenses?** No. The attorneys' fees and expenses will be paid exclusively from the Settlement Fund as awarded and approved by the Court. The attorneys' fees will be in an amount up to $1,666,666.66 and the expenses will not exceed $50,000. The Attorney Fee and Expense Application will be posted on the Settlement Website after it is filed with the Court. Plaintiffs will also seek Class Representative Service Awards in the amount of $2,500 for each Class Representative.

**Who is the Judge overseeing this settlement?** Judge Douglas R. Cole, United States District Court, Southern District of Ohio.

**Where may I locate a copy of the settlement agreement, learn more about the case, or learn more about submitting a Claim?** Please visit **www.eyemeddatasettlement.com**.

\*\*\* Please note that if you wish to submit a claim for compensation for out-of-pocket expenses on the attached Claim Form, you will likely need to submit your claim online so you may attach all information necessary to support your request for payment. A longer version of the Claim Form may be accessed on the Settlement Website.

**This Notice is a summary of the proposed Settlement.**

Tate, et al. v. EyeMed Vision
Care, LLC
c/o Settlement Administrator
P.O. Box XXXX
City, State Zip

<<Refnum>>

## CLAIM FORM

**Claims must be postmarked no later than _____, 2025. You may also submit a Claim Form online no later than _____, 2025.**

NAME: _____  ADDRESS: _____

**Monetary Compensation – You may file claims for <u>one or more</u> of the benefits in Sections 1, 2 and 3 below.**

1. *Pro Rata* **Cash Payment of $50**: Would you like to receive a *pro rata* cash payment of $50? (circle one)      Yes      No

   If you are a Class Member, you may receive a $50 cash payment, which may be increased or decreased *pro rata* from funds remaining in the Settlement Fund after all claims are submitted and deductions are made from the Settlement Fund.

2. **Lost Time**: Members of the Class may submit a Claim for Lost Time at a rate of $25/hour if at least one hour of time was spent in response to the Data Incident on remedying fraud, identity theft, or other alleged misuse of personal information caused by the Data Breach, or time spent on preventative and remedial measures to protect personal information caused by the Data Breach. You may claim up to 4 hours of lost time at $25 per hour ($100 maximum) under this settlement benefit. Claims for lost time can be combined with claims for Out-of-Pocket loss but are subject to the $10,000 cap for Out-of-Pocket losses.

   **I spent (circle one if applicable)      1      2      3      4      hours**

3. **Out-of-Pocket Expenses**: I am submitting a claim for out-of-pocket monetary expenses in the amount of $_____ (not more than $10,000) on account of out-of-pocket expenses and/losses I incurred as a result of the Data Incident. I understand that I am required to provide third-party documentation to support my claim for Out-of-Pocket Expenses, such as providing copies of any receipts, bank statements, or other documentation supporting my claim. I understand that "self-prepared" documents are insufficient to receive payment. I understand the Settlement Administrator may contact me for additional information before processing my claim. I understand that if I lack information supporting my claim, then I will likely not receive compensation for this Settlement benefit. I understand any monetary compensation I may receive under the Settlement for out-of-pocket monetary expenses is capped at $10,000.

**By signing my name below, I swear and affirm that the information included on this Claim Form is true and accurate, and that I am completing this Claim Form to the best of my personal knowledge.**

_____ **(signature)**